**E-FILED**
Tuesday, 11 October, 2016  09:16:17 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| Mary Holcomb and Mary Grovogel, on behalf of themselves, individually, and on behalf of all others similarly situated, and on behalf of the Hospital Sisters Health System Plans, | ) ) ) ) ) | No. |
| | ) | |
| Plaintiffs, | ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| v. | ) ) | **CLAIM OF UNCONSTITUTIONALITY** |
| | ) | |
| Hospital Sisters Health System; Hospital Sisters Health System Retirement Committee; John and Jane Does 1-20, Members of the Hospital Sisters Health System Retirement Committee; and John and Jane Does 21-40, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   JURISDICTION AND VENUE ........................................................................... 4

III.  PARTIES ............................................................................................................. 5

      A.    Plaintiffs .................................................................................................. 5

      B.    Defendants ............................................................................................... 5

IV.   THE BACKGROUND OF THE CHURCH PLAN EXEMPTION ................................ 8

      A.    The Adoption of ERISA .......................................................................... 8

      B.    The Scope of the Church Plan Exemption in 1974 ................................. 9

      C.    The Changes to the Church Plan Exemption in 1980 ............................. 9

V.    HSHS ................................................................................................................ 14

      A.    HSHS's Operations ............................................................................... 14

      B.    The HSHS Plans .................................................................................... 17

      C.    The HSHS Plans Meet the Definition of ERISA Defined Benefit
            Plans ...................................................................................................... 18

      D.    The Defendants Meet the Definition of ERISA Fiduciaries ................ 19

            1.    Nature of Fiduciary Status ......................................................... 19

            2.    Defendants Are Each ERISA Fiduciaries ................................. 21

      E.    The HSHS Plans Are Not Church Plans ............................................... 23

            1.    Only Two Types of Plans May Qualify as Church Plans
                  and the HSHS Plans are Neither ............................................... 23

            2.    Even *if* the HSHS Plans Could Otherwise Qualify as
                  Church Plans under ERISA §§ 3(33)(A) or (C)(i), they are
                  Excluded From Church Plan Status under ERISA §
                  3(33)(B)(ii) ............................................................................... 28

i

        3.      Even if the HSHS Plans Could Otherwise Qualify as
               Church Plans under ERISA, the Church Plan Exemption, as
               Claimed By HSHS, Violates the Establishment Clause of
               the First Amendment of the Constitution, and is Therefore
               Void and Ineffective ................................................................. 29

VI.    CLASS ALLEGATIONS ................................................................. 30

    A.      Numerosity................................................................................ 30

    B.      Commonality............................................................................. 31

    C.      Typicality ................................................................................. 31

    D.      Adequacy .................................................................................. 32

    E.      Rule 23(b)(1) Requirements .................................................... 32

    F.      Rule 23(b)(2) Requirements .................................................... 32

    G.     Rule 23(b)(3) Requirements .................................................... 33

VII.   CAUSES OF ACTION ................................................................. 34

    COUNT I ....................................................................................... 34

        (Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and
           502(a)(3) Against All Defendants) ......................................... 34

    COUNT II ...................................................................................... 35

        (Claim for Violation of Reporting and Disclosure Provisions
           Against Defendant HSHS)....................................................... 35

    COUNT III..................................................................................... 38

        (Claim for Violation of ERISA sections 203(e), 204(c)(3) and
           205(g) for Equitable Relief Pursuant to ERISA section
           502(a)(3) Against Defendant HSHS, and Pursuant to
           ERISA section 502(a)(2) Against Defendants HSHS, the
           HSHS Retirement Committee, and John and Jane Does 1-
           20, Members of the Retirement Committee) ........................... 38

    COUNT IV.................................................................................... 41

(Claim for Failure to Provide Minimum Funding Against
Defendant HSHS) ..................................................................... 41

COUNT V ............................................................................................ 42

(Claim for Failure to Establish the Plans Pursuant to Written
Instruments Meeting the Requirements of ERISA § 402
Against Defendant HSHS) ....................................................... 42

COUNT VI ........................................................................................... 42

(Claim for Failure to Establish a Trust Meeting the Requirements
of ERISA § 403 Against Defendant HSHS) ............................. 42

COUNT VII .......................................................................................... 43

(Claim for Clarification of Future Benefits Under ERISA §§
502(a)(1)(B) and 502(a)(3) Against Defendant HSHS) ......................... 43

COUNT VIII ......................................................................................... 44

(Claim for Civil Money Penalty Pursuant to ERISA § 502(a)(1)(A)
Against Defendant HSHS) ....................................................... 44

COUNT IX ........................................................................................... 45

(Claim for Breach of Fiduciary Duty Against All Defendants) ......................... 45

COUNT X ............................................................................................. 52

(Claim for Declaratory Relief That the Church Plan Exemption
Violates the Establishment Clause of the First Amendment
of the Constitution, and Is Therefore Void and Ineffective) .................. 52

VIII.   PRAYER FOR RELIEF .......................................................................... 55

Plaintiffs Mary Holcomb and Mary Grovogel ("Plaintiffs"), individually and on behalf of all those similarly situated, as well as on behalf of the Hospital Sisters Health System Pension Plans, as defined herein, by and through their attorneys, hereby allege as follows:

## I.       INTRODUCTION

1.       Defendant Hospital Sisters Health System, by and through its subsidiaries and/or affiliates ("HSHS" or "Defendant"), operates a hospital corporation that provides healthcare and healthcare-related services in Illinois and Wisconsin.  This case concerns whether HSHS properly maintains its pension plans under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  As demonstrated herein, HSHS fails to do so, to the detriment of its more than 14,600 employees who deserve better.

2.       As its name implies, ERISA was crafted to protect employee retirement funds.  A comprehensive history of ERISA put it this way:

> Employees should not participate in a pension plan for many years only to lose their pension  . . . because their plan did not have the funds to meet its obligations. The major reforms in ERISA—fiduciary standards of conduct, minimum vesting and funding standards, and a government-run insurance program—aimed to ensure that long-service employees actually received the benefits their retirement plan promised.

James Wooten, *The Employee Retirement Income Security Act of 1974: A Political History* 3 (Univ. of Cal. Press 2005).

3.       This class action is brought on behalf of all participants and beneficiaries of defined benefit pension plans that are established, maintained, administered, and/or sponsored by HSHS, HSHS's affiliates, and/or by HSHS's committees, and operated as or claimed to be "Church Plans" under ERISA (referred to as the "HSHS Plans" or simply the "Plans").  The HSHS Plans include, without limitation, The Hospital Sisters Health System Employees' Pension Plan.

4.      HSHS is violating numerous provisions of ERISA—including, on information

and belief, underfunding the HSHS Plans—while erroneously claiming that the Plans are exempt

from ERISA's protections because they are "Church Plans."  The HSHS Plans do not meet the

definition of "Church Plans" under ERISA because HSHS plainly is not a church or a convention

or association of churches and because the HSHS Plans were not established by a church or a

convention or association of churches.  That should be the end of the inquiry under ERISA,

resulting in a clear finding that the HSHS Plans are not Church Plans.  *See Stapleton v. Advocate*

*Health Care Network & Subsidiaries*, 817 F.3d 517 (7th Cir. 2016); *Kaplan v. Saint Peter's*

*Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015); *Rollins v. Dignity Health*, 830 F.3d 900 (9th Cir.

2016).

5.      HSHS may claim that it is permitted to establish its own Church Plans under

ERISA, even though it is not a church, because it is an organization "controlled by" or

"associated with" a church, within the meaning of ERISA.  Even if ERISA permitted such non-

church entities to establish Church Plans, which it does not, HSHS is not controlled by a church,

as the evidence will show.  Moreover, HSHS is not associated with a church within the meaning

of ERISA because it does not, as ERISA requires, "share common religious bonds and

convictions" with a church.

6.      HSHS is a non-profit healthcare corporation, not unlike other non-profit

healthcare systems with which HSHS competes in its commercial healthcare activities.  HSHS is

not owned or operated by a church and does not receive funding from a church.  No

denominational requirement exists for HSHS employees.  Indeed, HSHS tells prospective

employees that any choice of faith, or lack thereof, is not a factor in the recruiting and hiring of

HSHS employees.  In choosing to recruit and hire from the population at large, HSHS must also

be willing to accept neutral, generally applicable regulations, such as ERISA, imposed to protect those employees' legitimate interests. Moreover, HSHS affiliates with numerous healthcare service providers, including providers that claim to be secular, that are not tax-exempt, and have no relationship with any church.

7.     If HSHS, a non-church organization, could itself establish Church Plans, which Plaintiffs dispute, the Court would be required to evaluate many levels of evidence to determine whether HSHS shares common "religious bonds and convictions" with a church.

8.     Moreover, if the Court weighed all this evidence and determined that HSHS did share such common religious bonds and convictions with a church, or if for any other reason the Court determined that the HSHS Plans fell within the scope of the Church Plan exemption, the Church Plan exemption would then be, as applied to HSHS, an unconstitutional accommodation under the Establishment Clause of the First Amendment.  HSHS claims, in effect, that the participants in its defined benefit pension plans must be exempted from ERISA protections, and HSHS must be relieved of its ERISA financial obligations, because HSHS claims certain religious beliefs.  The Establishment Clause, however, does not allow such an economic preference for HSHS and burden-shifting to HSHS employees.  Extension of the Church Plan exemption to HSHS would be unconstitutional under Supreme Court law because it: (A) is not necessary to further the stated purposes of the exemption; (B) harms HSHS workers; (C) puts HSHS competitors at an economic disadvantage; (D) relieves HSHS of no genuine religious burden created by ERISA; and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

9.     HSHS's claim of Church Plan status for its defined benefit pension plans fails under both ERISA and the First Amendment.  Plaintiffs seek an Order requiring HSHS to

comply with ERISA and afford the Class all the protections of ERISA with respect to HSHS's

defined benefit pension plans, as well as an Order finding that the Church Plan exemption, as

claimed by HSHS, is unconstitutional because it violates the Establishment Clause of the First

Amendment.

## II.        JURISDICTION AND VENUE

10.        **Subject Matter Jurisdiction.**  This Court has jurisdiction over this action

pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United

States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions

brought under Title I of ERISA.

11.        **Personal Jurisdiction.**  This Court has personal jurisdiction over all Defendants

because ERISA provides for nationwide service of process.  ERISA § 502(e)(2), 29 U.S.C. §

1132(e)(2).  All of the Defendants are either residents of the United States or subject to service in

the United States, and the Court therefore has personal jurisdiction over them.  The Court also

has personal jurisdiction over them pursuant to Federal Rule of Civil Procedure 4(k)(1)(A)

because they would all be subject to a court of general jurisdiction in Illinois as a result of

Defendant HSHS transacting business in and/or having significant contacts with this District.

12.        **Venue.**  Venue is proper in this district pursuant to ERISA section 502(e)(2), 29

U.S.C. § 1132(e)(2), because (a) the Plans are administered in this District, (b) some or all of the

violations of ERISA took place in this District, and/or (c) Defendant HSHS may be found in this

District through its operation of its corporate headquarters in Springfield, Illinois, HSHS St.

John's Hospital in Springfield, Illinois, HSHS St. Francis Hospital in Litchfield, Illinois, and

HSHS St. Mary's Hospital in Decatur, Illinois.

13.        Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because

Defendant HSHS systematically and continuously does business in this District, and because a

substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

### III.    PARTIES

**A.    Plaintiffs**

14.    **Plaintiff Mary Holcomb**.  Plaintiff Holcomb was an employee of St. Elizabeth's in Belleville, Illinois, from 1987 until 1994.  Plaintiff Holcomb is a vested participant in a defined benefit pension plan maintained by HSHS, because she is eligible for, and receiving, pension benefits under one of the HSHS Plans.  Additionally and alternatively, Plaintiff Holcomb has a colorable claim to benefits under a pension plan maintained by HSHS and is a participant within the meaning of ERISA section 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the HSHS Plans pursuant to ERISA sections 502(a)(1)(A)-(B), (a)(2)-(3), (c)(1), (c)(3), 29 U.S.C. § 1132(a)(1)(A)-(B), (a)(2)-(3), (c)(1), (c)(3).

15.    **Plaintiff Mary Grovogel**.  Plaintiff Grovogel was an employee of St. Vincent's in Green Bay, Wisconsin, from 1977 until 2004.  Plaintiff Grovogel is a vested participant in a defined benefit pension plan maintained by HSHS, because she is eligible for, and receiving, pension benefits under one of the HSHS Plans.  Additionally and alternatively, Plaintiff Grovogel has a colorable claim to benefits under a pension plan maintained by HSHS and is a participant within the meaning of ERISA section 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the HSHS Plans pursuant to ERISA sections 502(a)(1)(A)-(B), (a)(2)-(3), (c)(1), (c)(3), 29 U.S.C. § 1132(a)(1)(A)-(B), (a)(2)-(3), (c)(1), (c)(3).

**B.    Defendants**

16.    As discussed below, all Defendants are ERISA fiduciaries.

17.     **Defendant Hospital Sisters Health System ("HSHS")**.  Defendant HSHS is a 501(c)(3) non-profit corporation organized under, and governed by, Illinois law.  HSHS is headquartered in Springfield, Illinois.  HSHS, through Hospital Sisters Services, Inc. ("HSSI"), an Illinois non-profit holding company that is the sole member of the hospitals, owns and operates fourteen hospitals in Illinois and Wisconsin that provide inpatient and outpatient healthcare services.  In fiscal year 2015, HSHS had net patient services revenues of $2.162 billion and assets of $4.021 billion.  HSHS employs more than 14,600 people.  Defendant HSHS is the employer responsible for maintaining the HSHS Plans and is, therefore, the plan sponsor of the HSHS Plans within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).  In the event that the terms of the instrument under which the HSHS Plans are operated do not specifically designate an "administrator," as provided in ERISA section 3(16)(A)(i), 29 U.S.C. § 1002(3)(16)(A)(i), then the plan administrator is the plan sponsor, HSHS.  *See* ERISA § 3(16)(A)(ii), 29 U.S.C. § 1002(3)(16)(A)(ii).

18.     At this time, because Defendant HSHS maintains the HSHS Plans as church plans and does not make the governing documents publicly available, Plaintiffs, on information and belief, allege that HSHS holds itself out to be and is the Plan Administrator.  The Plan Administrator is the person or persons, whether individual(s), committee(s), incorporated entity(ies), or other(s), specifically designated as the "administrator" by the terms of the instrument under which the HSHS Plans are operated, as provided in ERISA section 3(16)(A)(i), 29 U.S.C. § 1002(3)(16)(A)(i).  If, through discovery, an entity other than HSHS is identified as the Plan Administrator, such entity, person, or persons will be added by name as a Defendant in this action upon motion by Plaintiffs at an appropriate time.

19. **Defendant Hospital Sisters Health System Retirement Committee ("Retirement Committee")**.  Upon information and belief, the Retirement Committee is a committee of HSHS's Board of Directors.  Upon further information and belief, the Retirement Committee has responsibility for compensation and benefits at HSHS, including the HSHS Plans.  Plaintiffs are informed and believe that the Retirement Committee has fiduciary responsibilities with respect to the HSHS Plans, including fiduciary oversight and management of the Plans' assets.

20. **Defendants John and Jane Does, 1-20, Members of the Retirement Committee**.  Defendants John and Jane Does 1-20 are individuals who, through discovery, are found to be members of the HSHS Retirement Committee.  Upon information and belief, the members of the Retirement Committee are appointed by HSHS, by and through its Board of Directors.  Plaintiffs are informed and believe that the members of the Retirement Committee have responsibility for compensation and benefits at HSHS, including the HSHS Plans.  Upon further information and belief, the members of the Retirement Committee oversee the Plans' investment program and authorize major investment decisions with respect to the Plans' assets.  These individuals will be added by name as Defendants in this action upon motion by Plaintiffs at an appropriate time.

21. **Defendants John and Jane Does 21-40**.  Defendants John and Jane Does 21-40 are individuals who, through discovery, are found to have fiduciary responsibilities with respect to the HSHS Plans and are fiduciaries within the meaning of ERISA.  These individuals will be added by name as Defendants in this action upon motion by Plaintiffs at an appropriate time.

## IV.  THE BACKGROUND OF THE CHURCH PLAN EXEMPTION

### A.  The Adoption of ERISA

22.  Following years of study and debate, and broad bipartisan support, Congress adopted ERISA in 1974, and the statute was signed into law by President Ford on Labor Day of that year.  Among the factors that led to the enactment of ERISA were the widely publicized failures of certain defined benefit pension plans, especially the plan for employees of Studebaker Corporation, an automobile manufacturing company, which defaulted on its pension obligations in 1965.  *See generally* John H. Langbein et al., *Pension and Employee Benefit Law* 67-71 (6th ed. 2015).

23.  As originally adopted in 1974, and today, ERISA protects the retirement savings of pension plan participants in a variety of ways.  As to participants in traditional defined benefit pension plans, such as the Plans at issue here, ERISA mandates, among other things, that such plans be currently funded and actuarially sound, that participants' accruing benefits vest pursuant to certain defined schedules, that the administrators of the plans report certain information to participants and to government regulators, that the fiduciary duties of prudence, diversification, loyalty, and so on apply to those who manage the plans, and that the benefits promised by the plans be guaranteed, up to certain limits, by the Pension Benefit Guaranty Corporation ("PBGC").  *See, e.g.*, ERISA §§ 303, 203, 101-06, 404-06, 409, 4007, 4022, 29 U.S.C. §§ 1083, 1053, 1021-26, 1104-06, 1109, 1307, 1322.

24.  ERISA centers on pension plans, particularly defined benefit pension plans, as is reflected in the very title of the Act, which addresses "retirement income security."  However, ERISA also subjects to federal regulation defined contribution pension plans (such as 401(k) plans) and welfare plans, which provide health care, disability, severance and related non-retirement benefits.  ERISA § 3(34), (1), 29 U.S.C. § 1002(34), (1).

**B.      The Scope of the Church Plan Exemption in 1974**

25.      As adopted in 1974, ERISA provided an exemption from compliance for certain plans, in particular governmental plans and Church Plans.  Plans that met the statutory definitions were exempt from all of ERISA's substantive protections for participants.  ERISA § 4(b)(2), 29 U.S.C. § 1003(b)(2) (exemption from Title I of ERISA); ERISA § 4021(b)(3), 29 U.S.C. § 1321(b)(3) (exemption from Title IV of ERISA).

26.      ERISA defined a Church Plan as a plan "established and maintained for its employees by a church or by a convention or associations of churches."[1]

27.      Under the 1974 legislation, although a Church Plan was required to be established and maintained by a church, it could also include employees of certain pre-existing agencies of such church, but only until 1982.[2]  ERISA § 3(33)(C) (1974), 29 U.S.C. § 1002(33)(C) (1974) (Pub. L. No. 93-406, § 3(33), 88 Stat. 829 (1974)) (current version as amended at 29 U.S.C. § 1002(33) (2012)).  Thus, under the 1974 legislation, a pension plan that was not established and maintained by a church could not be a Church Plan.  *Id.*

**C.      The Changes to the Church Plan Exemption in 1980**

28.      Church groups had two major concerns about the definition of "Church Plans" in ERISA as adopted in 1974.  The first, and far more important, concern was that Church Plans after 1982 could not include the lay employees of agencies of a church.  The second concern that arose in the church community after 1974 was more technical.  Under the 1974 statute, all Church Plans, single-employer or multiemployer, had to be "established and maintained" by a

---

[1] ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).  ERISA is codified in both the labor and tax provisions of the United States Code, titles 29 and 26 respectively.  Many ERISA provisions appear in both titles.  For example, the essentially identical definition of Church Plan in the Internal Revenue Code ("IRC") is found at 26 U.S.C. § 414(e).

[2] H.R. Rep. No. 93-1280 (1974) (Conf. Rep.), *as reprinted in* 1974 U.S.C.C.A.N. 5038, 5044.

church or a convention/association of churches.  This ignored the role of the churches' financial services organizations in the day-to-day management of the pension plans.  In other words, although Church Plans were "established" by a church, in practice they were often "maintained" and/or "administered" by a separate financial services organization of the church, usually incorporated and typically called a church "pension board."

29.     These two concerns ultimately were addressed when ERISA was amended in 1980 in various respects, including a change in the definition of "Church Plan."  Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), Pub. L. No. 96-364, § 407, 94 Stat. 1208 (1980).  The amended definition is current law.

30.     As to the first concern (regarding lay employees of agencies of a church), Congress included a new definition of "employee" in subsection (C)(ii)(II) of section 3(33) of ERISA.  29 U.S.C. § 1002(33)(C)(ii)(II) (1980) (current version at 29 U.S.C. § 1002(33)(C)(ii)(II) (2012)).  As amended, an "employee" of a church or a convention/association of churches includes an employee of an organization "which is controlled by or associated with a church or a convention or association of churches."  *Id.*  The phrase "associated with" is then defined in ERISA § 3(33)(C)(iv) to include only those organizations that "share[] common religious bonds and convictions with that church or convention or association of churches."  29 U.S.C. § 1002(33)(C)(iv) (1980) (current version at 29 U.S.C. § 1002(33)(C)(iv) (2012)).  Although this new definition of "employee" permitted a "church plan" to include among its participants employees of organizations controlled by or associated with the church, convention, or association of churches, it remains the case that a plan covering such "employees" cannot qualify as a "church plan" unless it was "established by" the church, convention, or association of churches.  ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A) (2012).

31.     Three appellate cases have recently concluded that the statutory language in

ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A) is clear—only a church can establish a church

plan, that the legislative history underscores this conclusion and that any agency decisions that

reach a different conclusion—private letter rulings obtained without input from plan

participants—are entitled to no deference. *See Stapleton v. Advocate Health Care Network &*

*Subsidiaries*, 817 F.3d 517 (7th Cir. 2016); *Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d

175 (3d Cir. 2015); *Rollins v. Dignity Health*, 830 F.3d 900 (9th Cir. 2016).

32.     As to the second concern (regarding plans "maintained by" a separate church

pension board), the 1980 amendments spoke to the issue as follows:

> A plan established and maintained for its employees (or their beneficiaries) by a
> church or by a convention or association of churches includes a plan maintained
> by an organization, whether a civil law corporation or otherwise, *the principal
> purpose or function of which is the administration or funding of a plan or
> program for the provision of retirement benefits or welfare benefits*, or both, for
> the employees of a church or a convention or association of churches, if such
> organization is controlled by or associated with a church or a convention or
> association of churches.

ERISA § 3(33)(C)(i) (1980), 29 U.S.C. § 1002(33)(C)(i) (1980) (emphasis added) (current

version at 29 U.S.C. § 1002(33)(C)(i) (2012)).  Accordingly, under this provision, a plan

"established" by a church or by a convention or association of churches could retain its "church

plan" status even if the plan was "maintained by" a distinct organization, so long as (1) "the

principal purpose or function of [the organization] is the administration or funding of a plan or

program for the provision of retirement benefits or welfare benefits" and (2) the organization is

"controlled by or associated with" the church or convention or association of churches.  *Id.*

33.     This church "pension board" clarification, however, has no bearing on plans that

were not "established" by a church or by a convention or association of churches.  Thus, a plan

"established" by an organization "controlled by or associated with" a church is *not* a "church

plan" because it was not "established" by a church or by a convention or association of churches. *See Stapleton*, 817 F.3d at 523 ("[T]he plain language of (33)(C) merely adds an alternative meaning to one of the subsection (33)(A)'s two elements—"maintain" element—but does not change the fact that a plan must still be established by a church."); *Kaplan*, 810 F.3d at 183 ("The plain terms of ERISA only make these exemptions available to plans established in the first instance by churches."); *Rollins*, 830 F.3d at 906 ("We conclude that the more natural reading of subparagraph (C)(i) is that the phrase preceded by the word 'includes' serves only to broaden the definition of organizations that may maintain a church plan. The phrase does not eliminate the requirement that a church plan must be established by a church.").

34.     In the alternative, this "pension board" clarification has no bearing on plans that were not "maintained" by a church pension board.  Thus, even if a plan were "established" by a church, and even if it were "maintained by" an organization "controlled by or associated with" a church, such as a school, hospital, or publishing company, it still would not be a "church plan" if the principal purpose of the organization was other than the administration or funding of the plan.  In such plans, the plan is "maintained" by the school, hospital or publishing company, and usually through the human resources department of such entity.  It is not maintained by a church pension board:  No "organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits" maintains the plan.  *Compare with* ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i) (1980) (current version at 29 U.S.C. § 1002(33)(C)(i) (2012)).

35.     The requirements for Church Plan status under ERISA, both as originally adopted in 1974 and as amended in 1980, are, as explained above, very clear.  And there is no tension between the legislative history of the 1980 amendment and the amendment itself:  the Congress

enacted exactly what it wanted to enact. Fundamental to the scheme, both as originally adopted and as fine-tuned in 1980, was that neither an "affiliate" of a church (using the 1974 language) nor "an organization controlled by or associated with" a church (using the 1980 language) could itself establish a Church Plan. Its employees could be *included* in a Church Plan, but if it sponsored its own plan, that was not a Church Plan. With respect to "pension boards," the 1980 legislation simply clarified the long standing practice that churches could use their own financial organizations to manage their Church Plans.

36.    Unfortunately, in 1983, in response to a request for a private ruling, the Internal Revenue Service ("IRS") issued a short General Counsel Memorandum that misunderstood the statutory framework. IRS Gen. Counsel Mem. 39,007 (July 1, 1983). The author incorrectly relied on the "pension board" clarification to conclude that a non-church entity could sponsor its own Church Plan as long as the plan was managed by some "organization" that was controlled by or associated with a church. This, of course, is not what the statute says, nor what Congress intended. In any event, this mistake was then repeated, often in verbatim language, in subsequent IRS determinations and, after 1990, in Department of Labor ("DOL") determinations. Under the relevant law, these private rulings may only be relied upon by the parties thereto, within the narrow confines of the specific facts then disclosed to the agencies, and are not binding on this Court in any event. Moreover, the IRS and DOL interpretations of the statutory framework, as expressed in these private rulings, are not entitled to judicial deference because the rulings are conclusory, inconsistent, and lack meaningful analysis. *See Stapleton*, 817 F.3d 517 at 531 ("[T]he IRS letter rulings are not persuasive and we owe them no deference.").

# V.    HSHS

## A.    HSHS's Operations

37.    HSHS is a 501(c)(3) non-profit corporation organized under, and governed by, Illinois law.  HSHS is headquartered in Springfield, Illinois.  HSHS, through Hospital Sisters Services, Inc. ("HSSI"), an Illinois non-profit holding company that is the sole member of the hospitals, owns and operates fourteen hospitals in Illinois and Wisconsin that provide inpatient and outpatient healthcare services.  HSHS is also the parent corporation for several other subsidiary corporations, including, HSHS System Services Center, a philanthropic foundation called Hospital Sisters of St. Francis Foundation, Inc., and Kiara, Inc., an Illinois for-profit corporation that provides a vehicle for joint ventures with physicians. HSHS also includes an education and research cooperative called Prairie Education & Research Cooperative, and an insurance company called Renaissance Quality Insurance, Ltd. ("RQIL") that provides professional and general liability insurance coverage to HSHS and affiliates and is incorporated in the Cayman Islands.

38.    As of fiscal year 2015, HSHS had approximately $4.02 billion in assets.

39.    HSHS employs more than 14,600 people.

40.    In addition to its statewide hospital network, HSHS has branched out to include numerous subsidiaries and/or related entities, including for-profit entities such as Kiara, Inc., RQIL, Springfield Urgent Care Real Estate LLC, Prairie Heart Institute Management Company LLC, Northeast Wisconsin Radiation Therapy Services LLC, Pain Center of Wisconsin, Surgery Center of Sheboygan LLC, Carpenter Street Hotel LLC, Memorial and St. Elizabeth's Healthcare Cancer Treatment Center, Prairie Hearth Institute St. John's, Lasante Wisconsin Inc., Lasante Inc., Prairie Cardiovascular, Prevea Health Services Inc., Prevea Clinic, Inc., OJV Inc. and Streatorland Quality Care Pho LLC.

14

41.     On September 1, 2014, HSHS added a new hospital to its health system when HSSI became the sole corporate member of Community Memorial Hospital in Oconto Falls, Wisconsin, and effective on the date of the acquisition the hospital name was changed to St. Clare Memorial Hospital, Inc.

42.     While HSHS has a policy of treating certain patients regardless of their ability to pay, HSHS's charity care at cost (the cost of services provided to patients who cannot afford healthcare services due to inadequate resources) fell from $38 million in 2014 to $24 million in 2015.

43.     Like other large non-profit hospital systems, HSHS relies upon revenue bonds offered by the Illinois Finance Authority and the Wisconsin Health and Educational Facilities Authority to raise money, and it has significant sums invested in, among other things, fixed-income securities, domestic equities, international equities, custom hedge funds, and real estate.

44.     The principle purpose or function of HSHS is not the administration or funding of a plan or program for the provision of retirement or welfare benefits, or both, for the employees of a church or a convention or association of churches. Rather, according to HSHS's Form 990, "Hospital Sisters Health System is a healthcare ministry that includes 13 hospitals, numerous community-based health centers and clinics, and hundreds of physician partners across Illinois and Wisconsin."

45.     The management of HSHS is comprised primarily of lay people, and Executive Officers of HSHS receive compensation in line with executive officers of other hospital systems. For example, in 2013, the HSHS President and Chief Executive Officer received reportable compensation of $1.2 million, and its Chief Operating Officer received reportable compensation of $1.23 million.

46.     HSHS is not a church.

47.     HSHS is not a convention or association of churches.

48.     In the annual returns of a tax-exempt organization (Form 990s) that HSHS files with the IRS, HSHS claims that the reason for its public charity status is that it is "[an] organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in section 509(a)(1) or section 509(a)(2)."

49.     HSHS is not owned by a church.

50.     HSHS does not receive funding from any church.

51.     HSHS does not claim that any church has any liability for HSHS's debts or obligations.

52.     The governance of HSHS, including the management of HSHS's affairs, is vested in HSHS's Board of Directors.

53.     No church has any role in the maintenance and/or administration of the HSHS Plans.

54.     HSHS specifically chooses not to impose any denominational requirement on its employees.

55.     HSHS has no denominational requirement for its patients and/or clients.

56.     HSHS purports to disclose, and not keep confidential, its own highly complex financial records.  For example, HSHS is required and, in some cases, has voluntarily elected to comply with a broad array of elaborate state and federal regulations and reporting requirements, including Medicare and Medicaid.  In addition, HSHS makes public its consolidated financial statements, which describe HSHS's representations as to its own highly complex operations and

financial affairs.  Finally, HSHS's financial information is regularly disclosed to the rating agencies and the public when tax-exempt revenue bonds are issued.

57.     HSHS subsidiary Kiara, Inc. complies with ERISA for one of its retirement plans, the Kiara, Inc. 401(k) Profit Sharing Plan.

**B.     The HSHS Plans**

58.     HSHS maintains the HSHS Plans and has the power to continue, amend, or terminate the Plans.

59.     The HSHS Plans are non-contributory defined benefit pension plans covering substantially all of HSHS's employees.

60.     Upon information and belief, one of the HSHS Plans, The Hospital Sisters Health System Employees' Pension Plan, ("HSHS Employees' Pension Plan"), is a noncontributory defined benefit pension plan that covers substantially all of the employees of HSHS. The HSHS Employees' Pension Plan allows employees to earn a benefit based on a defined benefit formula using their pay and years of service. Employees can earn a year of service and a year of credited service for each calendar year in which they are credited with at least 1,000 hours of service. Participants are fully vested after they are credited with five calendar years of service.

61.     The Plan Administrator for the HSHS Employees' Pension Plan is HSHS.

62.     As of June 30, 2015, the HSHS Employees' Pension Plan was under-funded by over $317 million dollars.  Thus, as of June 30, 2015, that Plan was only funded at approximately 79%.

63.     HSHS also sponsors the HSHS Employees' Pension Plan with a Cash Balance Benefit. HSHS employees hired or rehired on or after July 1, 2014, are eligible to participate in the HSHS Employees' Pension Plan with a Cash Balance Benefit, whereby a participant's pension benefit is expressed in the form of a cash balance account that shows the benefit as a

lump sum dollar amount. According to HSHS, the cash balance benefit features an account balance that shows the value of the participant's accumulated benefit. HSHS pays the full cost, and credits participant accounts each year with contribution credits equal to 3% to 7% of the participant's eligible pay, depending on years of service, and interest credits based on the 10-year Treasury rate (reset annually), with a minimum of 3% and a maximum of 6%. Participants vest in their cash balance benefit after three years of service.

64.     The Plan Administrator for the HSHS Employees' Pension Plan with a Cash Balance Benefit is HSHS.

65.     On information and belief, the Retirement Committee monitors the HSHS Plans, including the investment portfolio of the HSHS Plans, which includes plan funding.

**C.     The HSHS Plans Meet the Definition of ERISA Defined Benefit Plans**

66.     The HSHS Plans are plans, funds, or programs that were established or maintained by HSHS and which, by their express terms and surrounding circumstances, provide retirement income to employees and/or result in the deferral of income by employees to the termination of their employment or beyond.  As such, the HSHS Plans meet the definition of "employee pension benefit plans" within the meaning of ERISA section 3(2)(A), 29 U.S.C. § 1002(2)(A).

67.     The HSHS Plans do not provide for an individual account for each participant and do not provide benefits based solely upon the amount contributed to a participants' account.  As such, the HSHS Plans are defined benefit plans within the meaning of ERISA section 3(35), 29 U.S.C. § 1002(35), and are not individual account plans or "defined contribution plans" within the meaning of ERISA section 3(34), 29 U.S.C. § 1002(34).

68.     At least one of the HSHS Plans provided a "lump sum" option as a form of benefit available to certain retirees.

69.     ERISA § 204(c)(3) provides that "in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age [*e.g.,* a lump-sum distribution] . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit . . ." 29 U.S.C. § 1054(c)(3).

70.     ERISA sections 203(e)(2) and 205(g)(3) also require that when a participant's accrued benefit is offered as the present value of such benefit, such as a lump sum distribution, the present value shall not be less than the present value of the plan's normal retirement benefit, calculated using the "applicable mortality table" and "applicable interest rate." 29 U.S.C. §§ 1053(e); 1055(g); *see also* 26 U.S.C. §§ 411(a)(11)(B); 417(e)(3) (corresponding Internal Revenue Code provisions); 26 C.F.R. § 1.417(e)-1 (implementing regulations).

71.     At least one of the HSHS Plans is being operated in violation of ERISA sections 205(g), 204(c)(3) and 203(e) because, on information and belief, it offers eligible participants lump sum distribution values that are less than the present value of the plan's normal retirement benefit, calculated using the "applicable mortality table" and "applicable interest rate." 29 U.S.C. §§ 1053(e); 1054(c)(3); 1055(g); *see also* 26 U.S.C. §§ 411(a)(11)(B); 417(e)(3) (corresponding Internal Revenue Code provisions); 26 C.F.R. § 1.417(e)-1 (implementing regulations).

**D.     The Defendants Meet the Definition of ERISA Fiduciaries**

**1.     Nature of Fiduciary Status**

72.     Every ERISA plan must have one or more "named fiduciaries."  ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).  The person named as the "administrator" in the plan instrument is automatically a fiduciary and, in the absence of such a designation, the sponsor is the administrator.  ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

73.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under section 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform

fiduciary functions.  Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

74.     Each of the Defendants was a fiduciary with respect to the Plans and owed fiduciary duties to the Plans and their participants and beneficiaries under ERISA in the manner and to the extent set forth in the Plans' documents and/or through their conduct.

75.     As fiduciaries, Defendants were required by ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the Plans and the Plans' investments solely in the interest of the Plans' participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

76.     Plaintiffs do not allege that each Defendant was a fiduciary with respect to all aspects of the Plans' management and administration.  Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

77.     ERISA permits fiduciary functions to be delegated to insiders without an automatic violation of the rules against prohibited transactions, ERISA § 408(c)(3), 29 U.S.C. §

1108(c)(3), but insider fiduciaries, like external fiduciaries, must act solely in the interest of participants and beneficiaries, not in the interest of the plan sponsor.

### 2.  Defendants Are Each ERISA Fiduciaries

78.  **Defendant HSHS**.  HSHS is the employer responsible for maintaining the HSHS Plans and is, therefore, the plan sponsor of the HSHS Plans within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).  A booklet entitled "Your HSHS Retirement Program" that is distributed to HSHS Plan participants also states that HSHS is the Plan's Sponsor and Administrator.

79.  In the absence of a Plan Administrator specifically designated in or pursuant to any instrument governing the Plans, the plan sponsor of the HSHS Plans under ERISA section 3(16)(A)(ii), 29 U.S.C. § 1002(16)(A)(ii), is the Plan Administrator.  Thus, even without being so designated in the program booklet, HSHS is an "administrator" of the HSHS Plans within the meaning of ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A), a named fiduciary within the meaning of ERISA section 402, 29 U.S.C. § 1102, and a functional fiduciary within the meaning of ERISA section 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii).

80.  Upon information and belief, Defendant HSHS's responsibilities include fiduciary oversight of the HSHS Plans.  Upon further information and belief, Defendant HSHS, by and through its Board of Directors, had the responsibility to appoint, and hence to monitor and remove, the members of the Retirement Committee and other fiduciaries of the Plans.

81.  Defendant HSHS is a fiduciary with respect to the HSHS Plans within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercises discretionary authority or discretionary control respecting management of the HSHS Plans, exercises authority and control respecting management or disposition of the HSHS Plans' assets, and/or has discretionary authority or discretionary responsibility in the administration of the HSHS Plans.

82.     **Defendant Retirement Committee.**  The Retirement Committee of the HSHS Board of Directors, on information and belief, oversees the Plans' investment program and authorizes major investment decisions with respect to the Plans' assets. Upon further information and belief, the responsibilities of the Retirement Committee include fiduciary oversight of the HSHS Plans.

83.     **Defendants John and Jane Does 1-20, Members of the Retirement Committee**.  John and Jane Does 1-20, as members of the Retirement Committee, oversee the Plans' investment program and authorize major investment decisions with respect to the Plans' assets.  Upon information and belief, the responsibilities of John and Jane Does 1-20, members of the Retirement Committee, include fiduciary oversight of the HSHS Plans.

84.     **John and Jane Does 21-40**.  John and Jane Does 21-40 are individuals who, through discovery, are found to have fiduciary responsibilities with respect to the HSHS Plans.

85.     HSHS, the Retirement Committee; John and Jane Does 1-20, members of the Retirement Committee; and John and Jane Does 21-40 are fiduciaries with respect to the HSHS Plans within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), because they exercise discretionary authority or discretionary control respecting management of the HSHS Plans, exercise authority and control respecting management or disposition of the HSHS Plans' assets, and/or have discretionary authority or discretionary responsibility in the administration of the HSHS Plans.

86.     Plaintiffs reserve the right to amend this Complaint to name other or additional Defendants once they have had the opportunity to conduct discovery on these issues.

87.     Although HSHS maintains that the HSHS Plans are exempt from ERISA coverage as Church Plans, it claims ERISA status for the Kiara, Inc. 401(k) plan.

88.     Compliance with ERISA creates no undue, genuine burden on any religious practice of HSHS, as evidenced by HSHS's claimed compliance with ERISA for the Kiara Inc. 401(k) plan.

**E.     The HSHS Plans Are Not Church Plans**

89.     HSHS claims that the HSHS Plans are Church Plans under ERISA section 3(33), 29 U.S.C. § 1002(33), and the analogous section of the IRC, and therefore exempt from ERISA's coverage under ERISA section 4(b)(2), 29 U.S.C. § 1003(b)(2).

**1.     Only Two Types of Plans May Qualify as Church Plans and the HSHS Plans are Neither**

90.     Under section 3(33) of ERISA, 29 U.S.C. § 1002(33), only the following two types of plans may qualify as Church Plans:

- <u>First</u>, under section 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a plan *established and maintained* by a church or by a convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B); and

- <u>Second</u>, under section 3(33)(C)(i) of ERISA, 29 U.S.C. § 1002(33)(C)(i), a plan *established* by a church or by a convention or association of churches that is *maintained* by an organization, *the principal purpose or function of which* is the administration or funding of a retirement plan, if such organization is controlled by or associated with a church or convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B).

Both types of plans must be "established" by a church or by a convention or association of churches in order to qualify as "Church Plans."

91.     Although other portions of ERISA section 3(33)(C) address, among other matters, who can be *participants* in Church Plans—in other words, which employees can be in Church Plans, etc.—these other portions of ERISA section 3(33)(C) do not add any other type of *plan* that can be a Church Plan.  29 U.S.C. § 1002(33)(C).  The only two types of plans that can qualify as Church Plans are those described in ERISA section 3(33)(A) and in section

3(33)(C)(i).  29 U.S.C. §§ 3(33)(A) and (C)(i).  The HSHS Plans do not qualify as Church Plans

under either ERISA section 3(33)(A) or section 3(33)(C)(i).  29 U.S.C. §§ 3(33)(A) or (C)(i).

92.     First, under ERISA section 3(33)(A), "[t]he term "church plan" means a plan

established and maintained for its employees by a church or by a convention or association of

churches which is exempt from tax under section 501 of title 26."  ERISA § 3(33)(A), 29 U.S.C.

§ 1002(33)(A).  A church plan "means," and therefore by definition, *must be* "a plan established

. . . by a church or convention or association of churches."

93.     The HSHS Plans at issue here are not Church Plans as defined in ERISA section

3(33)(A), 29 U.S.C. § 1002(33)(A), because the HSHS Plans were established, maintained,

administered and/or sponsored by HSHS for its own, or its affiliates' own, employees.  Because

neither HSHS nor its affiliates are a church or a convention or association of churches, nor do

they claim to be, the HSHS Plans were not "established and maintained by" a church or by a

convention or association of churches and were not maintained for employees of any church or

convention or association of churches.  That is the end of the inquiry under ERISA section

3(33)(A), 29 U.S.C. § 1002(33)(A).

94.     Second, under ERISA section 3(33)(C)(i), a Church Plan also includes a plan

"established" by a church or by a convention or association of churches that is "maintained by an

organization, whether a civil law corporation or otherwise, the principal purpose or function of

which is the administration or funding of a plan or program for the provision of retirement

benefits or welfare benefits, or both, for the employees of a church or a convention or association

of churches, if such organization is controlled by or associated with a church or a convention or

association of churches."  ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

95.     The HSHS Plans are not Church Plans as defined in ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the HSHS Plans were not "established" by a church or by a convention or association of churches.  Moreover, the HSHS Plans do not qualify as "Church Plans" under section 3(33)(C)(i) because they are not maintained by any entity whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both.  This ends any argument that the HSHS Plans could be Church Plans under ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

96.     In the alternative, to the extent that HSHS claims that the HSHS Plans qualify as "Church Plans" under section 3(33)(C)(i) because they are "maintained" by an entity within HSHS, other than HSHS, whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, the claim fails because the only entity with the power to "maintain" the HSHS Plans, which includes the power to continue and/or terminate the Plans, is HSHS.  The claim also fails because if all that is required for a plan to qualify as a church plan is that it meet section C's requirement that it be maintained by a church-associated organization, there would be no purpose for section A, which defines a church plan as one established and maintained by a church.  This ends any argument that the HSHS Plans could be Church Plans under ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because they are maintained by an entity other than HSHS.

97.     However, even if the HSHS Plans had been "established" by a church and even if the principal purpose or function of HSHS was the administration or funding of the HSHS Plans (instead of running a healthcare system), the HSHS Plans still would not qualify as Church Plans under ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the principal purpose of the Plans is not to provide retirement or welfare benefits to *employees of a church or convention*

*or association of churches*.  For example, the approximately 14,600  participants in the HSHS

Plans work for HSHS, a non-profit healthcare system.  HSHS is not a church or convention or

association of churches and its employees are not employees of a church or convention or

association of churches within the meaning of ERISA.

98.     Under ERISA section 3(33)(C)(ii), 29 U.S.C. § 1002(33)(C)(ii), however, an

employee of a tax exempt organization that is controlled by or associated with a church or a

convention or association of churches also may be considered an employee of a church.  This

part of the definition merely explains which employees a church plan may cover *once a valid*

*church plan is established*.  The HSHS Plans also fail this part of the definition, because HSHS

is not controlled by or associated with a church or convention or association of churches within

the meaning of ERISA.

99.     HSHS is organized as a non-profit corporation under Illinois law.

100.    HSHS is governed by its Board of Directors.

101.    HSHS's Board of Directors owes fiduciary duties to the non-profit corporation.

102.    HSHS is not controlled by a church or convention or association of churches.

103.    HSHS is not owned by a church.

104.    HSHS is not operated by a church.

105.    HSHS does not receive funding from a church.[3]

106.    In addition, HSHS is not "associated with" a church or convention or association

of churches within the meaning of ERISA.  Under ERISA section 3(33)(C)(iv), 29 U.S.C. §

1002(33)(C)(iv), an organization "is associated with a church or a convention or association of

---

[3] Notably, if HSHS were "controlled by" the Roman Catholic Church, then the church would be
exposed to significant potential liability stemming from medical malpractice and other legal
claims related to the provision of medical care by HSHS.

churches if it shares common religious bonds and convictions with that church or convention or association of churches." HSHS does not share common religious bonds and convictions with a church or association of churches.

107.    For example, HSHS tells prospective employees that religious affiliation is not a factor in the recruiting and hiring of HSHS employees. In choosing to recruit and hire from the population at large, HSHS must also be willing to accept generally applicable, neutral regulations, such as ERISA, which protect those employees' legitimate interests.

108.    In addition, HSHS has acquired hospitals that claim no religious affiliation, including Community Memorial Hospital of Oconto Falls, Wisconsin. HSHS also has a practice of affiliating with entities like Prevea Health Systems, Inc. Prevea Health is the largest, physician-owned multi-specialty group in the state of Wisconsin. St. Vincent Hospital and St. Mary's Hospital Medical Center each have a 25% interest in Prevea Health Systems, Inc. In choosing to compete in the commercial arena of healthcare services and to embark upon a business plan that targets healthcare facilities with no claimed ties to any particular religion, or to religion generally, HSHS must be willing to accept neutral regulations, such as ERISA, imposed to protect its employees' legitimate interests.

109.    HSHS provides non-denominational chapels and encourages its clients to seek the faith of their own choosing.

110.    The HSHS Plans further fail to satisfy the requirements of ERISA section 3(33)(C)(i) because this section requires the organization that maintains the plans to be "controlled by or associated with" a church or convention or association of churches within the meaning of ERISA. 29 U.S.C. § 1002(33)(C)(i). Thus, even if (1) a church had "established" the HSHS Plans (which it did not), (2) the principal purpose or function of HSHS was the

administration or funding of the HSHS Plans (instead of running a healthcare system), and (3) HSHS's employees were employees of a church or convention or association of churches (which they are not), the HSHS Plans still would not qualify as Church Plans under ERISA section 3(33)(C)(i) because—for the reasons outlined above— HSHS is not *controlled by or associated with* a church or convention or association of churches within the meaning of ERISA.  29 U.S.C. § 1002(33)(C)(i).

111.    Finally, even if HSHS were "controlled by or associated with" a church, and thus its employees were deemed "employees" of a church under ERISA section 3(33)(C)(ii)(2), and even if the HSHS Plans was "maintained by" either a church or "pension board" satisfying the requirements of ERISA section 3(33)(C)(i), the HSHS Plans still would not be "Church Plans" because all "Church Plans" must be "established" by a church or by a convention or association of churches.  29 U.S.C. §§ 1002(33)(A), (C)(i).  Although a church may be deemed an "employer" of the employees of an organization that it "controls" or with which it is "associated," *see* ERISA § 3(33)(C)(iii), 29 U.S.C. § 1002(33)(C)(iii), nothing in ERISA provides that the church may be deemed to have "established" a retirement plan that was in fact established by the "controlled" or "associated" organization.  Accordingly, because no church established the HSHS Plans, the Plans cannot be a "Church Plans" within the meaning of ERISA.

## 2.    Even *if* the HSHS Plans Could Otherwise Qualify as Church Plans under ERISA §§ 3(33)(A) or (C)(i), they are Excluded From Church Plan Status under ERISA § 3(33)(B)(ii)

112.    Under ERISA section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii), a plan is specifically excluded from Church Plan status if less than substantially all of the plan participants are members of the clergy or employed by an organization controlled by or associated with a

church or convention or association of churches.  In this case, there are approximately 14,600 participants in the HSHS Plans, and very nearly all of them are non-clergy healthcare workers.

113.    If the approximately 14,600 participants in the HSHS Plans do not work for an organization that is controlled by or associated with a church or convention or association of churches, then even if the HSHS Plans could otherwise qualify as Church Plans under ERISA sections 3(33)(A) or (C)(i), they still would be foreclosed from Church Plan status under section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii).

114.    As set forth above, HSHS is not controlled by a church or convention or association of churches, nor does it share common religious bonds and convictions with a church or convention or association of churches.

3.      **Even if the HSHS Plans Could Otherwise Qualify as Church Plans under ERISA, the Church Plan Exemption, as Claimed By HSHS, Violates the Establishment Clause of the First Amendment of the Constitution, and is Therefore Void and Ineffective**

115.    The Church Plan exemption is an accommodation for *churches* that establish and maintain pension plans, and it allows such plans to be exempt from ERISA.

116.    The Establishment Clause guards against the establishment of religion by the government.  The government "establishes religion" when, among other activities, it privileges those with religious beliefs (*e.g.*, exempts them from neutral regulations) at the expense of non-adherents and/or while imposing legal and other burdens on nonmembers.  Extension of the Church Plan exemption to HSHS, a non-church entity, privileges HSHS for its claimed faith at the expense of its employees, who are told that their faith is not relevant to their employment, yet who are then denied the benefit of insured, funded pensions, as well as many other important ERISA protections.  Similarly, HSHS, a non-church entity, has a privileged economic advantage over its competitors in the commercial arena it has chosen, based solely on HSHS's claimed

religious beliefs.  This too is prohibited by the Establishment Clause.  Simply put, when

government provides a regulatory exemption "exclusively to religious organizations that is not

required by the Free Exercise Clause and that . . . burdens nonbeneficiaries," it has endorsed

religion in violation of the Establishment Clause.  *See, e.g.*, *Tex. Monthly, Inc. v. Bullock*, 489

U.S. 1, 15, 18 n.8 (1989) (plurality opinion).

117.    As set forth in more detail below in Count X, the extension of the Church Plan

accommodation to HSHS, which is not a church, violates the Establishment Clause because it is

not necessary to further the stated purposes of the exemption, harms HSHS workers, puts HSHS

competitors at an economic disadvantage, relieves HSHS of no genuine religious burden created

by ERISA, and creates more government entanglement with alleged religious beliefs than

compliance with ERISA creates.  Accordingly, the Church Plan exemption, as claimed by

HSHS, is void and ineffective.

### VI.    CLASS ALLEGATIONS

118.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of themselves and the following class of persons similarly

situated:  All participants or beneficiaries of any defined benefit pension plan operated as or

claimed by HSHS to be a Church Plan.

119.    Excluded from the Class are any high-level executives at HSHS or any employees

who have responsibility or involvement in the administration of the Plans, or who are

subsequently determined to be fiduciaries of the HSHS Plans, including John and Jane Does 1-

20, members of the Retirement Committee, and John and Jane Does 21-40.

### A.    Numerosity

120.    The exact number of Class members is unknown to Plaintiffs at this time, but may

be readily determined from records maintained by HSHS.  HSHS currently employs

approximately 14,600 individuals.  Upon information and belief, many, if not all, of those persons are likely members of the Class, and thus the Class is so numerous that joinder of all members is impracticable.

**B.    Commonality**

121.    The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including (1) whether the Plans are exempt from ERISA as Church Plans, and, if not, (2) whether the fiduciaries of the Plans have failed to administer and failed to enforce the funding obligations of the Plans in accordance with ERISA.

122.    The issues regarding the relief are also common to the members of the Class as the relief will consist of (1) a declaration that the Plans are ERISA covered plans; (2) an order requiring that the Plans comply with the administration and enforce the funding obligations of the Plans in accordance with ERISA; and (3) an order requiring HSHS to pay civil penalties to the Class, in the same statutory daily amount for each member of the Class.

**C.    Typicality**

123.    Plaintiffs' claims are typical of the claims of the other members of the Class because their claims arise from the same event, practice and/or course of conduct, namely Defendants' failure to maintain the Plans in accordance with ERISA.  Plaintiffs' claims are also typical because all Class members are similarly affected by Defendants' wrongful conduct.

124.    Plaintiffs' claims are also typical of the claims of the other members of the Class because, to the extent Plaintiffs seek equitable relief, it will affect all Class members equally. Specifically, the equitable relief sought consists primarily of (i) a declaration that the HSHS Plans are not Church Plans; and (ii) a declaration that the HSHS Plans are ERISA covered plans that must comply with the administration and funding requirements of ERISA.  In addition, to

the extent Plaintiffs seek monetary relief, it is for civil fines to the Class in the same statutory

daily amount for each member of the Class.

125.    HSHS does not have any defenses unique to Plaintiffs' claims that would make

Plaintiffs' claims atypical of the remainder of the Class.

**D.    Adequacy**

126.    Plaintiffs will fairly and adequately represent and protect the interests of all

members of the Class.

127.    Plaintiffs do not have any interests antagonistic to or in conflict with the interests

of the Class.

128.    Defendants have no unique defenses against the Plaintiffs that would interfere

with Plaintiffs' representation of the Class.

129.    Plaintiffs have engaged counsel with extensive experience prosecuting class

actions in general and ERISA class actions in particular.

**E.    Rule 23(b)(1) Requirements**

130.    The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of

separate actions by the members of the Class would create a risk of establishing incompatible

standards of conduct for Defendants.

131.    The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these

claims by individual members of the Class would, as a practical matter, be dispositive of the

interests of the other members not parties to the actions, or substantially impair or impede the

ability of other members of the Class to protect their interests.

**F.    Rule 23(b)(2) Requirements**

132.    Class action status is also warranted under Rule 23(b)(2) because Defendants

have acted or refused to act on grounds generally applicable to the Class, thereby making

appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

**G.    Rule 23(b)(3) Requirements**

133.    If the Class is not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members.  The common issues of law or fact that predominate over any questions affecting only individual members include:  (1) whether the Plans are exempt from ERISA as Church Plans, and, if not, (2) whether the fiduciaries of the Plans have failed to administer and fund the Plans in accordance with ERISA, and (3) whether the Church Plan exemption, as claimed by HSHS, violates the Establishment Clause of the First Amendment.  A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A.    Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plans or affect each Class member equally;

B.    Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

C.    This litigation is properly concentrated in this forum, which is where Defendant HSHS transacts business because: (a) the Plans are administered in this forum, (b) some or all of the violations of ERISA took place in this forum, and Defendant HSHS operates its corporate headquarters and several hospitals in this forum; and

D.    There are no difficulties managing this case as a class action.

## VII.    CAUSES OF ACTION

### COUNT I

### (Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against All Defendants)

134.    Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs herein.

135.    ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief ... to enforce any provisions of this title."  Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief that the HSHS Plans are not Church Plans within the meaning of ERISA section 3(33), 29 U.S.C. § 1002(33), and thus are subject to the provisions of Title I and Title IV of ERISA.

136.    ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  Pursuant to these provisions, Plaintiffs seek an order directing the HSHS Plans' sponsor and administrator to bring the HSHS Plans into compliance with ERISA.

137.    ERISA section 502(a)(2), 29 U.S.C. § 1132(2), authorizes a participant or beneficiary to bring a civil action for appropriate relief under 29 U.S.C. § 1109(a), against a fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" and the fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to

such other equitable or remedial relief as the court may deem appropriate." Because the operation of the Plans as non-ERISA Plans was a breach of Defendants' fiduciary duties, the Defendants breached their fiduciary duties and Plaintiffs also seek Plan-wide equitable and remedial relief under ERISA section 502(a)(2).

138.     As the HSHS Plans are not Church Plans within the meaning of ERISA section 3(33), 29 U.S.C. § 1002(33), and meet the definition of pension plans under ERISA section 3(2), 29 U.S.C. § 1002(2), the HSHS Plans should be declared to be ERISA-covered pension plans, and the Defendants should be ordered to bring the HSHS Plans into compliance with ERISA, including by remedying the violations set forth below.

## COUNT II

**(Claim for Violation of Reporting and Disclosure Provisions Against Defendant HSHS)**

139.     Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

**A.      Summary Plan Descriptions**

140.     At no time has Defendant HSHS, as the Plan Administrator, provided Plaintiffs or any member of the Class with Summary Plan Descriptions with respect to the HSHS Plans that meet the requirements of ERISA section 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

141.     Because Defendant HSHS has been the Plan Administrator of the Plans at all relevant times, Defendant HSHS violated ERISA section 104, 29 U.S.C. § 1024, by failing to provide Plaintiffs and members of the Class with adequate Summary Plan Descriptions.

**B.      Annual Reports**

142.     At no time has Defendant HSHS filed an annual report with respect to the HSHS Plans with the Secretary of Labor in compliance with ERISA section 103, 29 U.S.C. § 1023, nor

has it filed a Form 5500 and associated schedules and attachments, which the Secretary has approved as an alternative method of compliance with ERISA section 103, 29 U.S.C. § 1023.

143.    Because Defendant HSHS has been the Plan Administrator of the HSHS Plans at all relevant times, Defendant HSHS has violated ERISA section 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the HSHS Plans with the Secretary of Labor in compliance with ERISA section 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules and attachments, which the Secretary has approved as an alternate method of compliance with ERISA section 103, 29 U.S.C. § 1023.

**C.    Summary Annual Reports**

144.    At no time has Defendant HSHS furnished Plaintiffs or any member of the Class with Summary Annual Reports with respect to the HSHS Plans in compliance with ERISA section 104(b)(3) and regulations promulgated thereunder.  29 U.S.C. § 1024(b)(3).

145.    Because Defendant HSHS has been the Plan Administrator of the HSHS Plans at all relevant times, Defendant HSHS has violated ERISA section 104(b)(3), 29 U.S.C. § 1024(b)(3), by failing to furnish Plaintiffs or any member of the Class with Summary Annual Reports with respect to the HSHS Plans in compliance with ERISA section 104(b)(3) and the regulations promulgated thereunder.  29 U.S.C. § 1024(b)(3).

**D.    Notification of Failure to Meet Minimum Funding**

146.    At no time has HSHS furnished Plaintiffs or any member of the Class with Notices with respect to the HSHS Plans pursuant to ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that HSHS had failed to make payments required to comply with ERISA section 302, 29 U.S.C. § 1082, with respect to the HSHS Plans.

147.    Defendant HSHS is the employer that maintains the HSHS Plans.

148.     At no time has Defendant HSHS funded the HSHS Plans in accordance with ERISA section 302, 29 U.S.C. § 1082.

149.     As the employer maintaining the HSHS Plans, Defendant HSHS has violated ERISA section 302, 29 U.S.C. § 1082, by failing to fund the HSHS Plans. HSHS is liable for its own violations of ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by 29 C.F.R. § 2575.502(c)(3)) for each day that Defendant has failed to provide Plaintiffs and each Class member with the notice required by ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1).

**E.     Funding Notices**

150.     At no time has Defendant HSHS furnished Plaintiffs or any member of the Class with a Funding Notice with respect to the HSHS Plans pursuant to ERISA section 101(f), 29 U.S.C. § 1021(f).

151.     Because Defendant HSHS has been the Plan Administrator of the HSHS Plans at all relevant times, it has violated ERISA section 101(f) by failing to provide each participant and beneficiary of the HSHS Plans with the Funding Notice required by ERISA section 101(f), and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by ERISA section 502(c)(1), 29 U.S.C. § 1132(c)(1), amended by 29 C.F.R. § 2575.502c-1) for each day that Defendant HSHS has failed to provide Plaintiffs and each Class member with the notice required by ERISA section 101(f), 29 U.S.C. § 1021(f).

**F.  Pension Benefit Statements**

152.    At no time has Defendant HSHS furnished Plaintiffs or any member of the Class with a Pension Benefit Statement with respect to the HSHS Plans pursuant to ERISA section 105(a)(1), 29 U.S.C. § 1025(a)(1).

153.    Because Defendant HSHS has been the Plan Administrator of the HSHS Plans at all relevant times, it has violated ERISA section 105(a)(1) and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by ERISA section 502(c)(1), 29 U.S.C. § 1132(c)(1), amended by 29 C.F.R. § 2575.502c-1) for each day that Defendant HSHS has failed to provide Plaintiffs and each Class member with the Pension Benefit Statements required by ERISA section 105(a)(1), 29 U.S.C. § 1025(a)(1).

**COUNT III**

**(Claim for Violation of ERISA sections 203(e), 204(c)(3) and 205(g) for Equitable Relief Pursuant to ERISA section 502(a)(3) Against Defendant HSHS, and Pursuant to ERISA section 502(a)(2) Against Defendants HSHS, the HSHS Retirement Committee, and John and Jane Does 1-20, Members of the Retirement Committee)**

154.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

155.    ERISA section 204(c)(3) provides that "in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age [*e.g.,* a lump-sum distribution] . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit . . ." 29 U.S.C. § 1054(c)(3).

156.    ERISA sections 203(e)(2) and 205(g)(3) also require that the present value of any optional form of benefit, such as a lump sum distribution, cannot be less than the present value of the plan's normal retirement benefit, calculated using the "applicable mortality table" and "applicable interest rate." 29 U.S.C. §§ 1053(e); 1055(g); *see also* 26 U.S.C. §§ 411(a)(11)(B);

38

417(e)(3) (corresponding Internal Revenue Code provisions); 26 C.F.R. § 1.417(e)-1

(implementing regulations).

157.    The Hospital Sisters Health System Employees' Pension Plan provided for a

"lump sum" option as a form of benefit to certain retirees who were eligible to take their

retirement benefits in the form of a lump sum. The lump sum distribution values provided to

participants in the Hospital Sisters Health System Employees' Pension Plan were however,

substantially less than the present values of the participants' normal retirement benefits,

calculated using the applicable mortality table and applicable interest rate mandated by ERISA

section 205(g)(3), 29 U.S.C. § 1055(g)(3).  By offering these participants a lump sum

distribution amount that was less than the actuarial equivalent of their accrued benefit

commencing at normal retirement age, calculated using the applicable mortality table and

applicable interest rate, Defendants HSHS, the Retirement Committee, and the Members of the

Retirement Committee (John and Jane Does 1-20) have violated ERISA sections 203(e),

204(c)(3), and 205(g); 29 U.S.C. §§ 1053(e), 1054(c)(3), 1055(g); their tax counterparts, IRC §§

411(a)(11) and 417(e), 26 U.S.C. §§ 411(a)(11)(B), 417(e)(3) and the implementing regulations

at 26 C.F.R. § 1.417(e)-1.

158.    ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or

beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision

of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to

redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the

plan."

159.    Pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an

order directing the HSHS Plans' sponsor and administrator to retroactively amend all the HSHS

defined benefit Plans that provided for a "lump sum" option as a form of benefit available to certain retirees, including but not limited to the Hospital Sisters Health System Employees' Pension Plan to comply with all the special rules for offering lump sum distributions as an optional form of benefit, including ERISA sections 203(e), 204(c)(3), and 205(g); 29 U.S.C. §§ 1053(e), 1054(c)(3), 1055(g); their tax counterparts, IRC §§ 411(a)(11) and 417(e), 26 U.S.C. §§ 411(a)(11)(B), 417(e)(3) and the implementing regulations at 26 C.F.R. § 1.417(e)-1.

160.     Pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order requiring the HSHS Plan Administrator to furnish all participants in HSHS Plans that provided for "lump sum" options as a form of benefit available to certain retirees with a benefit statement that is compliant with ERISA and that provides a lump sum distribution value that is calculated in accordance with ERISA.

161.     To the extent the members of the Class have received lump sum distribution amounts that are less than the actuarial equivalent of their accrued benefit commencing at normal retirement age, calculated using the applicable mortality table and applicable interest rate, there has been an unlawful forfeiture of benefits to which participants are entitled.

162.     The HSHS Retirement Committee and the Members of the Retirement Committee ("Retirement Committee Defendants") have violated section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), to the extent they have followed Plan documents that are inconsistent with ERISA. Pursuant to sections 404(a)(1)(D) and 502(a)(3), 29 U.S.C. §§ 1104(a)(1)(D) and 1132(a)(3), Plaintiffs seek an order requiring the Retirement Committee Defendants to calculate the amount of the lump sum payments participants would have received under the Plan document retroactively amended to comply with ERISA and to pay to participants the additional monies to which they are entitled.

163.    Pursuant to section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order requiring HSHS  to contribute additional funding to the HSHS Plans, as required by ERISA section 302, 29 U.S.C. §§ 1052, to cover the additional liabilities for the Plans resulting from the additional benefits owed to participants who were offered and elected to receive a lump sum distribution of their benefits that was less than the actuarial equivalent of their accrued benefit commencing at normal retirement age, calculated using the applicable mortality table and applicable interest rate, in accordance with ERISA.

## COUNT IV

### (Claim for Failure to Provide Minimum Funding Against Defendant HSHS)

164.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

165.    ERISA section 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined benefit plans that require employers to make minimum contributions to their plans so that each plan will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.

166.    HSHS was responsible for making the contributions that should have been made pursuant to ERISA section 302, 29 U.S.C. § 1082, at a level commensurate with that which would be required under ERISA.

167.    At all relevant times, HSHS has failed to make contributions in satisfaction of the minimum funding standards of ERISA section 302, 29 U.S.C. § 1082.

168.    By failing to make the required contributions to the HSHS Plans, either in whole or in partial satisfaction of the minimum funding requirements established by ERISA section 302, Defendant HSHS has violated ERISA section 302, 29 U.S.C. § 1082.

## COUNT V

### (Claim for Failure to Establish the Plans Pursuant to Written Instruments Meeting the Requirements of ERISA § 402 Against Defendant HSHS)

169.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

170.    ERISA section 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will provide, among other things, "for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan" and will "provide a procedure for establishing and carrying out a funding policy and method constituent with the objectives of the plan and the requirements of [Title I of ERISA]."

171.    Although the benefits provided by the HSHS Plans were described to the employees and retirees of HSHS (and/or its affiliates and subsidiaries) in various written communications, the HSHS Plans have never been established pursuant to written instruments meeting the requirements of ERISA section 402, 29 U.S.C. § 1102.

172.    Defendant HSHS violated section 402 by failing to promulgate written instruments in compliance with ERISA section 402 to govern the HSHS Plans' operations and administration.  29 U.S.C. § 1102.

## COUNT VI

### (Claim for Failure to Establish a Trust Meeting the Requirements of ERISA § 403 Against Defendant HSHS)

173.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

174.    ERISA section 403, 29 U.S.C. § 1103, provides, subject to certain exceptions not applicable here, that all assets of an employee benefit plan shall be held in trust by one or more

trustees, that the trustees shall be either named in the trust instrument or in the plan instrument described in section 402(a), 29 U.S.C. § 1102(a), or appointed by a person who is a named fiduciary.

175.    Although the HSHS Plans' assets have been held in trust, the trust does not meet the requirements of ERISA section 403, 29 U.S.C. § 1103.

176.    Defendant HSHS violated section 403 by failing to put the HSHS Plans' assets in trust in compliance with ERISA section 403.  29 U.S.C. § 1103.

## COUNT VII

### (Claim for Clarification of Future Benefits Under ERISA §§ 502(a)(1)(B) and 502(a)(3) Against Defendant HSHS)

177.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

178.    ERISA section 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B), provides, in part, that a participant or beneficiary may bring a civil action to "clarify his rights to future benefits under the terms of the plan."

179.    Plaintiffs and members of the Class have not been provided ERISA-compliant benefit statements.

180.    Pursuant to ERISA sections 502(a)(1)(B), (a)(3), 29 U.S.C. § 1132(a)(1)(B), (a)(3), once the Plans are made compliant with ERISA, Plaintiffs seek to clarify their rights under the terms of the Plans and to require Defendant HSHS to provide Plaintiffs and the Class with ERISA-compliant benefit statements.

## COUNT VIII

### (Claim for Civil Money Penalty Pursuant to ERISA § 502(a)(1)(A) Against Defendant HSHS)

181.     Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

182.     ERISA section 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), provides that a participant may bring a civil action for the relief provided in ERISA section 502(c), 29 U.S.C. § 1132(c).

183.     ERISA section 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an employer maintaining a plan who fails to meet the notice requirement of ERISA section 101(d), 29 U.S.C. § 1021(d), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

184.     ERISA section 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to meet the notice requirement of ERISA section 101(f), 29 U.S.C. § 1021(f), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

185.     ERISA section 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to provide a Pension Benefit Statement at least once every three years to a participant with a nonforfeitable accrued benefit who is employed by the employer maintaining the plan at the time the statement is to be furnished as required by ERISA section 105(a), 29 U.S.C. § 1025(a), may be liable for up to $110 per day from the date of such failure.

186.     Because Defendant HSHS, as the employer, has failed to give the notices required by ERISA section 101(d), 29 U.S.C. § 1021(d), as set forth in Count II Subpart D, Defendant

HSHS is liable to Plaintiffs and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

187.    Because Defendant HSHS, as Plan Administrator of the Plans, has failed to give the notices required by ERISA section 101(f), 29 U.S.C. § 1021 (f), and the Pension Benefit Statement required by ERISA section 105(a), 29 U.S.C. § 1025(a), as set forth in Count II Subparts E through F, Defendant HSHS is liable to the Plaintiffs and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

## COUNT IX

### (Claim for Breach of Fiduciary Duty Against All Defendants)

188.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

189.    Plaintiffs bring this Count VIII for breach of fiduciary duty pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2).

**A.    Breach of the Duty of Prudence and Loyalty**

190.    This sub-Count alleges fiduciary breach against all Defendants.

191.    ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(a)    for the exclusive purpose of:

(i)    providing benefits to participants and beneficiaries; and

(ii)    defraying reasonable expenses of administering the plan;

(b)     with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . [and]

(c)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [title I of ERISA] and title IV.

192.    As fiduciaries with respect to the HSHS Plans, Defendants had the authority to enforce each provision of ERISA alleged to have been violated in the foregoing paragraphs pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).  Having the authority to enforce the provisions of ERISA at those respective times, ERISA sections 404(a)(1)(A)-(D), 29 U.S.C. § 1104(a)(1)(A)-(D), imposed on Defendants the respective duty to enforce those provisions in the interest of the participants and beneficiaries of the HSHS Plans during the times that each was a fiduciary of the HSHS Plans.

193.    Defendants have never enforced any of the provisions of ERISA set forth in Counts I-VI with respect to the HSHS Plans.

194.    By failing to enforce the provisions of ERISA set forth in Counts I-VI, Defendants breached the fiduciary duties that they owed to Plaintiffs and the Class.

195.    The failure of Defendants to enforce the funding obligations owed to the Plans has resulted in a loss to the HSHS Plans equal to the foregone funding and earnings thereon, and profited Defendant HSHS by providing it the use of the money owed to the HSHS Plans for its general business purposes.

## B.    Prohibited Transactions

196.    This sub-Count alleges violations on behalf of all Defendants.

197.    ERISA section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to extend credit to a party in

interest, as defined in ERISA section 3(14), 29 U.S.C. § 1002(14), if he or she knows or should know that such transaction constitutes an extension of credit to a party in interest.

198.    ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest if he or she knows or should know that such transaction constitutes a use of plan assets for the benefit of a party in interest.

199.    ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a fiduciary with respect to a plan for his or her own interest or for his or her own account.

200.    As fiduciaries with respect to the Plans and, with respect to HSHS, as an employer of employees covered by the Plans, the Defendants at all relevant times were parties in interest with respect to the HSHS Plans pursuant to ERISA sections 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

201.    By failing to enforce the funding obligations created by ERISA and owed to the Plans, Defendants extended credit from the HSHS Plans to HSHS in violation of ERISA section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known that their failure to enforce the funding obligation constituted such an extension of credit.

202.    By failing to enforce the funding obligations created by ERISA and owed to the HSHS Plans, Defendants used the HSHS Plans' assets for HSHS's own benefit, when Defendants knew or should have known that their failure to enforce the funding obligations constituted such a use of HSHS Plans' assets, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

203.    By failing to enforce the funding obligations created by ERISA and owed to the HSHS Plans, Defendant HSHS used HSHS Plans' assets in HSHS's interest in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1).

204.    The failure of Defendants to enforce the funding obligations owed to the HSHS Plans has resulted in a loss to the HSHS Plans equal to the foregone funding and earnings thereon.

205.    The failure of Defendants to enforce the funding obligations owed to the HSHS Plans has profited Defendant HSHS by providing it the use of money owed to the HSHS Plans for its general business purposes.

**C.    Failure to Monitor Fiduciaries**

206.    This sub-Count alleges fiduciary breach against Defendant HSHS and the members of the Retirement Committee.

207.    As alleged above, during the Class Period, Defendant HSHS and the Retirement Committee members were named fiduciaries pursuant to ERISA section 402(a)(1), 29 U.S.C. § 1102(a)(1), or de facto fiduciaries within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

208.    The scope of the fiduciary responsibilities of HSHS included the responsibility to appoint, and remove, and thus, monitor the performance of other fiduciaries, including the Retirement Committee and the Individual Defendants.

209.    In the case of the Retirement Committee members, these monitoring duties included the duty to monitor the Individual Defendants and any other person, subcommittee, or

entity to whom the members of the Retirement Committee delegated or allocated responsibility for the Plans, including responsibility of the Plans' investments and/or funding.

210.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries perform their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

211.    The monitoring duty further requires that appointing fiduciaries have procedures in place so that they may review and evaluate, on an ongoing basis, whether the "hands-on" fiduciaries are doing an adequate job (for example, by requiring periodic reports on their work and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need).  In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

212.    Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with the complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

213.    Defendants HSHS and the Retirement Committee members breached their fiduciary monitoring duties by, among other things:  (a) failing to appoint persons who would run the Plans as ERISA Plans; (b) failing to ensure that the monitored fiduciaries appreciated the true extent of not running the Plans as ERISA Plans; (c) to the extent any appointee lacked such

information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plans; and (d) failing to remove appointees whose performance was inadequate in that they continued to run the Plans as non-ERISA Plans, and who breached their fiduciary duties under ERISA.

214.    The failure of Defendants HSHS and the Retirement Committee members to enforce the funding obligations owed to the Plans has resulted in a loss to the HSHS Plans equal to the foregone funding and earnings thereon, and profited Defendant HSHS by providing it the use of money owed to the HSHS Plans for its general business purposes.

**D.     Co-Fiduciary Liability**

215.    This sub-Count alleges co-fiduciary liability against all Defendants.

216.    As alleged above, all Defendants were named fiduciaries pursuant to ERISA section 402(a)(1), 29 U.S.C. § 1102(a)(1), or de facto fiduciaries within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

217.    ERISA section 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach.  Defendants breached all three provisions.

218.    **Knowledge of a Breach and Failure to Remedy**.  ERISA section 405(a)(3), 29 U.S.C. § 1105, imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.  Each of the Defendants knew of the

breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.

219.    Because Defendants knew that the Plans were not being run as ERISA Plans, Defendants knew that the other Defendants were breaching their duties by not complying with ERISA.  Yet, they failed to undertake any effort to remedy these breaches.

220.    **Knowing Participation in a Breach**.  ERISA section 405(a)(1), 29 U.S.C. § 1105(1), imposes liability on a fiduciary for a breach of fiduciary responsibility by another fiduciary with respect to the same plan if he knowingly participates in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach. HSHS knowingly participated in the fiduciary breaches of the other Defendants in that it benefited from the Plans not being run as ERISA Plans.

221.    **Enabling a Breach**.  ERISA section 405(a)(2), 29 U.S.C. § 1105(2), imposes liability on a fiduciary if, by failing to comply with ERISA section 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

222.    The failure of Defendant HSHS to monitor the Fiduciary Committee Defendants enabled those Fiduciary Committee Defendants to breach their duties.

223.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans are currently underfunded, meaning that the Plans do not have sufficient assets to pay all accrued benefits they have promised to their participants and beneficiaries and are legally obligated to pay under ERISA.

224.    The failure of Defendants to enforce the funding obligations owed to the Plans has resulted in a loss to the HSHS Plans equal to the foregone funding and earnings thereon, and

profited Defendant HSHS by providing it the use of money owed to the HSHS Plans for its general business purposes.

## COUNT X

**(Claim for Declaratory Relief That the Church Plan Exemption Violates the Establishment Clause of the First Amendment of the Constitution, and Is Therefore Void and Ineffective)**

225.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

226.    The ERISA Church Plan exemption is an accommodation that exempts churches and associations of churches, under certain circumstances, from compliance with ERISA.

227.    The ERISA Church Plan exemption, as claimed by HSHS, is an attempt to extend the accommodation beyond churches and associations of churches, to HSHS —a non-profit healthcare system that has chosen to compete with commercial businesses, including other non-profits as well as for-profits, by entering the economic arena and trafficking in the marketplace. Extension of the Church Plan exemption to HSHS violates the Establishment Clause because it (A) is not necessary to further the stated purposes of the exemption, (B) harms HSHS workers, (C) puts HSHS competitors at an economic disadvantage, (D) relieves HSHS of no genuine religious burden created by ERISA, and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

228.    **Not Necessary to Further Stated Purpose.**  Congress enacted the Church Plan exemption to avoid "examination of books and records . . . an unjustified invasion of the confidential relationship with regard to churches and their religious activities."[4]  This purpose has no application to HSHS, which is neither run by nor intimately connected to any church financially.  And, unlike a church, HSHS has *no confidential books and records* to shield from

---

[4] S. Rep. No. 93-383 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 4889, 4965.

government scrutiny.  HSHS already purports to disclose all material financial records and relationships when it seeks Medicare and Medicaid reimbursements and issues tax exempt bonds.

229.  **Harms Workers**.  Employers, including HSHS, are not legally required to provide pensions; instead, they choose to provide pensions in order to reap tax rewards and attract and retain employees in a competitive labor market.  HSHS tells prospective employees that any choice of faith, or lack thereof, is not a factor in the recruiting and hiring of HSHS employees.  Thus, as a practical matter, and by HSHS's own design, its pension plan participants include people of a vast number of divergent faiths, as well as those who belong to no faith.  In choosing to recruit and hire from the public at large, HSHS must be willing to accept neutral regulations, such as ERISA, imposed to protect those employees' legitimate interests.  To be constitutional, an accommodation such as the Church Plan exemption must not impose burdens on non-adherents without due consideration of their interests.  The Church Plan exemption, as claimed by HSHS, places its thousands of longtime employees' justified reliance on their pension benefits at great risk, including because the Plans are uninsured and, upon information and belief, underfunded.  In addition, HSHS fails to provide the multitude of other ERISA protections designed to safeguard its employees' pensions.  The Church Plan exemption, as claimed by HSHS, provides no consideration of the harm that it causes to HSHS's employees.

230.  **Puts HSHS's Competitors at an Economic Disadvantage.**  HSHS's commercial rivals face material disadvantages in their competition with HSHS because the rivals must use their current assets to fully fund, insure (through premiums to the PBGC), and administer their pension plans, as well as providing other ERISA protections.  In claiming that the HSHS Plans are exempt Church Plans, HSHS enjoys a material competitive advantage because it is able to

divert significant cash, which otherwise would be required to fund, insure (through premiums to the PBGC), and administer the HSHS Plans, to its competitive growth strategy.  To be constitutional, an accommodation such as the Church Plan exemption must take adequate account of harm to non-beneficiaries.  The Church Plan exemption, as applied by HSHS, provides no consideration of the disadvantage it creates for HSHS's competitors.

231.  **Relieves No Genuine Religious Burden Imposed by ERISA.**  An exemption exclusively for religion must alleviate a significant, *state-imposed* interference with religious exercise.  The Church Plan exemption, as claimed by HSHS, responds to no genuine burden created by ERISA on any of HSHS's religious practices.  ERISA is materially indistinguishable from the array of neutral Congressional enactments that do not significantly burden religious exercise when applied to commercial activities.  Moreover, HSHS maintains multiple separate ERISA-governed plans, which further evidences that ERISA creates no undue burden on any genuine religious practice of HSHS.

232.  **Creates Government Entanglement with Alleged Religious Beliefs.**  An HSHS exemption requires courts and agencies to examine unilateral religious "convictions" of a non-church entity and determine if they are "shared" with a church, in the absence of any actual church responsible for the pensions.  This *creates* entanglement between government and putative religious beliefs.  ERISA compliance, on the other hand, requires *zero* entanglement with religion for HSHS because ERISA is a neutral statute that regulates pension protections and HSHS has no relevant confidential books, records or relationships.  Thus, an extension of the Church Plan exemption to HSHS produces state entanglement with alleged religious beliefs while compliance with ERISA creates no meaningful state entanglement with alleged religious beliefs.

233.     Plaintiffs seek a declaration by the Court that the Church Plan exemption, as claimed by HSHS, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendants on all claims and requests that the Court award the following relief:

A.     Declaring that the HSHS Plans are employee pension benefit plans within the meaning of ERISA section 3(2), 29 U.S.C. § 1002(2), are defined benefit pension plans within the meaning of ERISA section 3(35), 29 U.S.C. § 1002(35), and are not Church Plans within the definition of ERISA section 3(33), 29 U.S.C. § 1002(33);

B.     Ordering HSHS to reform the HSHS Plans to bring them into compliance with ERISA and to have the HSHS Plans comply with ERISA, including as follows:

1.     Revising the Plans' documents to reflect that the Plans are defined benefit plans regulated by ERISA;

2.     Requiring HSHS to fund the HSHS Plans in accordance with ERISA's funding requirements, disclose required information to the HSHS Plans' participants and beneficiaries, and otherwise comply with all other reporting, vesting, and funding requirements of Parts 1, 2 and 3 of Title I of ERISA, 29 U.S.C. §§ 1021-31, 1051-61, 1081-85;

3.     Reforming the HSHS Plans to comply with ERISA's vesting and accrual requirements and providing benefits in the form of a qualified joint and survivor annuity;

4.     Requiring the adoption of an instrument governing the HSHS Plans that complies with ERISA section 402, 29 U.S.C. § 1102;

5.      Requiring Defendants to comply with ERISA reporting and disclosure requirements, including by filing Form 5500 reports, distributing ERISA-compliant Summary Plan Descriptions, Summary Annual Reports, and ERISA-compliant Participant Benefit Statements, and providing Notices of the HSHS Plans' funding status and deficiencies;

6.      Requiring clarification of rights to future benefits pursuant to ERISA section 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B);

7.      Requiring the establishment of a trust in compliance with ERISA section 403, 29 U.S.C. § 1103;

8.      Requiring Defendants, as fiduciaries of the Plans, to make the HSHS Plans whole for any losses and disgorge any profits HSHS accumulated as a result of fiduciary breaches;

9.      Appointing an Independent Fiduciary to hold the HSHS Plans' assets in trust, to manage and administer the HSHS Plans and its assets, and to enforce the terms of ERISA;

10.     Requiring HSHS to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to inform Plaintiffs and each Class member of its failure to properly fund the Plans;

11.     Requiring Defendant HSHS to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to provide Plaintiffs and each Class member with a Funding Notice;

12.     Requiring Defendant HSHS to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to provide a benefit statement under ERISA section 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B);

C.     Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the HSHS Plans;

D.     Declaring, with respect to Count X, that the Church Plan exemption, as claimed by HSHS, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective;

E.     Awarding to Plaintiffs attorneys' fees and expenses as provided by the common fund doctrine, ERISA section 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine;

F.     Awarding to Plaintiffs taxable costs pursuant to ERISA section 502(g), 29 U.S.C. § 1132(g), 28 U.S.C. § 1920, and other applicable law;

G.     Awarding to Plaintiffs pre-judgment interest on any amounts awarded pursuant to law; and

H.     Awarding, declaring or otherwise providing Plaintiffs and the Class all relief under ERISA section 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper.

DATED this 11th day of October, 2016.

ARMSTRONG LAW FIRM LLC

*/s/ Matthew H. Armstrong*
Matthew H. Armstrong, ARDC #6226591
8816 Manchester Road, No. 109
St. Louis, MO 63144
Tel: (314) 258-0212

matt@mattarmstronglaw.com

**KELLER ROHRBACK L.L.P.**
Lynn Lincoln Sarko
Laura R. Gerber
Alison S. Gaffney
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
lgerber@kellerrohrback.com
agaffney@kellerrohrback.com

**KELLER ROHRBACK L.L.P.**
Ron Kilgard
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012
Tel.: (602) 248-0088
Fax: (602) 248-2822
rkilgard@kellerrohrback.com

**COHEN MILSTEIN SELLERS
  & TOLL, PLLC**
Karen L. Handorf
Michelle Yau
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Tel: (202) 408-4600
Fax: (202) 408-4699
khandorf@cohenmilstein.com
myau@cohenmilstein.com

*Attorneys for Plaintiffs*