# EXHIBIT A

*Holcomb v. Hospital Sisters Health System*
Settlement Agreement
May 31, 2018

---

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MARY HOLCOMB, *et al.*, on behalf of themselves, individually, and on behalf of all others similarly situated, and on behalf of the Hospital Sisters Health System Employees' Pension Plan,<br><br>Plaintiffs,<br><br>v.<br><br>HOSPITAL SISTERS HEALTH SYSTEM, *et al.*,<br><br>Defendants. | Civil Action No. 3:16-cv-03282<br><br>Judge Sue E. Myerscough |

## CLASS ACTION SETTLEMENT AGREEMENT

This CLASS ACTION SETTLEMENT AGREEMENT ("Settlement Agreement") is entered into by and between Plaintiffs, as defined in § 1.15 below, on the one hand, and Defendants, as defined in § 1.8 below, on the other. Plaintiffs and Defendants are referred to collectively in this Settlement Agreement as the "Parties." Capitalized terms and phrases have the meanings provided in § 1 below or as specified elsewhere in this Settlement Agreement.

1. DEFINITIONS.

1.1. *"Action"* or *"Consolidated Action"* shall mean: the consolidated class action *Holcomb, et al., v. Hospital Sisters Health System, et al.*, No. 3:16-cv-03282, an action pending in the United States District Court for the Central District of Illinois, and refers collectively to the *Holcomb* action and to the *Mollet v. Hospital Sisters Health System, et al.*, No. 3:16-cv-3296 (C.D. Ill.) action, consolidated with the *Holcomb* action on November 18, 2016.

1.2. *"Church Plan"* shall mean: a plan which meets the definition of a "Church Plan" under ERISA § 3(33), 29 U.S.C. § 1002(33), and is thus exempt from the provisions of Title I and Title IV of ERISA.

1.3. *"Class Counsel"* shall mean: Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll, PLLC.

1.4. *"Class Notice"* shall have the meaning provided in § 2.2.1.

1

*Holcomb v. Hospital Sisters Health System*
**Settlement Agreement**
**May 31, 2018**

---

1.5. *"Class Settlement Amount"* shall have the meaning set forth in § 7.1.1.

1.6. *"Complaint"* shall mean: the Amended Master Consolidated Complaint filed on August 15, 2017.

1.7. *"Court"* shall mean: The United States District Court for the Central District of Illinois.

1.8. *"Defendants"* shall mean: Hospital Sisters Health System; Hospital Sisters Health System Retirement Committee and its Members; Hospital Sisters Services, Inc.; Stephen Bochenek; William Murray; Matthew Lambert, M.D.; Christa Ann Struewing, OSF; Robert B. Atwell; Steven Hassebrock; William Blum; Janice Wiegmann; Mary Starmann-Harrison; John Sheehan; Members of the Retirement Committee of the Board of Directors of Hospital Sisters Health System; Members of the Investment Committee of the Board of Directors of Hospital Sisters Health System; and John and Jane Does 1-20.

1.9. *"Effective Date of Settlement"* shall mean: the date on which all of the conditions to settlement set forth in § 2 of this Settlement Agreement have been fully satisfied or waived and the Settlement shall have become Final.

1.10. *"ERISA"* shall mean: the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

1.11. *"Final"* shall mean: with respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari, or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and completed disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand.

1.12. *"HSHS"* shall mean: Hospital Sisters Health System, a non-profit corporation, and its successors.

1.13. *"Incentive Awards"* shall mean: any monetary amounts awarded by the Court in recognition of the Named Plaintiffs' assistance in the prosecution of the Consolidated Action and payable pursuant to § 7.1.2 below, as follows: $5,000 each to Mary Holcomb, Mary Grovogel, Holly Mollet, Rhonda Rosenthal, and Donald Schneider.

1.14. *"Person"* shall mean: an individual, partnership, corporation, or any other form of organization.

1.15. *"Plaintiffs"* and *"Named Plaintiffs"* shall mean: Mary Holcomb, Mary Grovogel, Holly Mollet, Rhonda Rosenthal, and Donald Schneider.

*Holcomb v. Hospital Sisters Health System*
**Settlement Agreement**
**May 31, 2018**

---

1.16. *"Plan"* shall mean: The Hospital Sisters Health System Employees Pension Plan.

1.17. *"Released Claims"* shall have the meaning provided in § 3.1.

1.18. *"Releasees"* shall mean: All Defendants, Hospital Sisters Ministries, Hospital Sisters Health System, Hospital Sisters of the Third Order of St. Francis, all affiliates of Hospital Sisters Health System, including any entity in which Hospital Sisters Health System and/or Hospital Sisters Services, Inc. has an ownership interest, and/or all entities that are considered to be part of the Hospital Sisters Health System control group under Internal Revenue Code § 414, their employees, agents, and directors, including the Hospital Sisters Health System Retirement Committee and John and Jane Does 1-20.

1.19. *"Settlement"* shall mean: the settlement to be consummated under this Settlement Agreement pursuant to the Final Approval Order.

1.20. *"Settlement Class"* shall mean: As of May 31, 2018, all present and former participants (vested or non-vested) or beneficiaries of the Plan.

1.21. *"Successor-In-Interest"* or *"Successor"* shall mean: a Person's estate, legal representatives, heirs, successors or assigns, and any other Person who can make a legal claim by or through such Person.

1.22. *"Term Sheet"* shall mean: the document entitled "HSHS Settlement Term Sheet" dated April 4, 2018.

2. CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE SETTLEMENT.

2.1. *Effectiveness of This Settlement Agreement.* This Settlement Agreement shall not become binding unless and until each and every one of the following conditions in §§ 2.2 through 2.7 shall have been satisfied.

2.2. *Court Approval.* The Settlement contemplated under this Settlement Agreement shall have been approved by the Court, as provided for in this § 2.2. The Parties agree jointly to recommend to the Court that it approve the terms of this Settlement Agreement and the Settlement contemplated hereunder. The Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps or efforts which may become necessary by order of the Court (unless such order modifies the terms of this Settlement Agreement) or otherwise, to carry out this Settlement Agreement, including the following:

> 2.2.1. *Motion for Preliminary Approval of Settlement and of Notices.* The Court shall have approved the preliminary motion to be filed by Plaintiffs on or before June 8, 2018 ("Preliminary Motion") by issuing an order (the "Preliminary Approval Order"), including a form of class notice approved by the Court (the "Class Notice"):

3

    (a)    Preliminarily approving this Settlement Agreement;

    (b)    Directing the time and manner of communication of the Class Notice; and

    (c)    Finding that:

(i) the proposed form of Class Notice fairly and adequately: (A) describes the terms and effect of this Settlement Agreement and of the Settlement; (B) gives notice to the Settlement Class of the time and place of the hearing of the motion for final approval of this Settlement Agreement; and (C) describes how the recipients of the Class Notice may object to approval of this Settlement Agreement;

(ii) the Parties may make non-substantive changes to the Class Notice without additional Court approval; and

(iii) the proposed manner of communicating the Class Notice to the members of the Settlement Class is the best notice practicable under the circumstances.

2.2.2. *Class Certification.*

(a)    The Court shall have certified the Action as a non-opt out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), with Named Plaintiffs as the named Settlement Class representatives, Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll, PLLC as Class Counsel, and with a "Settlement Class" as defined above.

(b)    The Parties agree to stipulate to certification of the Action as a non-opt out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), on the foregoing terms. If the Settlement does not become Final, then no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and the Consolidated Action will for all purposes revert to its status as of April 3, 2018.

2.2.3. *Issuance of Class Notice.* On the date and in the manner set by the Court in its Preliminary Approval Order, Defendants will cause notice of the Preliminary Approval Order to be delivered to the Settlement Class in the form and manner approved by the Court. The Parties shall confer in good faith with regard to the form of the Class Notice in an effort to utilize cost effective forms of notice. The Parties agree, and the Preliminary Approval Order shall provide, that the last known addresses for members of the Settlement Class in the possession of the Plan's current record-keeper will suffice for all purposes in connection with this Settlement, including, without limitation, the mailing of the Class Notice. Defendants will pay the cost for the notice program as part of the Settlement administration.

    2.2.4. *Internet/Publication of Class Notice.* Class Counsel also shall have given notice by publication of the Settlement Agreement and Class Notice on their firms' websites.

    2.2.5. *The Fairness Hearing.*

        (a) On the date set by the Court in its Preliminary Approval Order, the Parties shall participate in the hearing (the "Fairness Hearing"), during or after which the Court will determine by issuing a written order (the "Final Approval Order") determining whether: (i) this Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court; (ii) final judgment approving this Settlement Agreement should be entered ("Judgment"); (iii) the Settlement Class should be certified as a mandatory non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23; (iv) the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to members of the Settlement Class; (v) the requirements of the Class Action Fairness Act have been satisfied; (vi) to award Incentive Award(s) and if so, the amount; and (vii) to award attorneys' fees and further expenses and, if so, the amounts.

        (b) The Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Approval Order at the Fairness Hearing and will not do anything inconsistent with obtaining such a Final Approval Order.

    2.2.6. *Motion for Final Approval of Class Action Settlement.* On the date set by the Court in its Preliminary Approval Order, Plaintiffs shall have filed a motion (the "Final Approval Motion") for a Final Approval Order. The Final Approval Motion shall seek the Court's finding that the Final Approval Order is a final judgment disposing of all claims and all Parties.

2.3. *Finality of Final Approval Order.* The Final Approval Order shall have become Final, as defined in § 1.11 of this Settlement Agreement.

2.4. *Compliance with the Class Action Fairness Act.* The Court shall have determined that Defendants complied with the Class Action Fairness Act of 2005 ("CAFA") and its notice requirements by providing appropriate federal and state officials with information about the Settlement.

2.5. *Dismissal of Action.* The Consolidated Action shall have been dismissed with prejudice as against Defendants on the Effective Date of Settlement.

2.6. *No Termination.* The Settlement shall not have terminated pursuant to § 9 below.

*Holcomb v. Hospital Sisters Health System*
**Settlement Agreement**
*May 31, 2018*

---

2.7. *Establishment of Effective Date of Settlement.* If Plaintiffs and Defendants disagree as to whether each and every condition set forth in § 2 has been satisfied, they shall promptly confer in good faith and, if unable to resolve their differences within five (5) business days thereafter, shall present their disputes for determination to Robert M. Meyer, the Parties' mediator, who shall make a final determination regarding the Effective Date of the Settlement and whether all the conditions set forth in § 2 have been satisfied. No portion of the Class Settlement Amount shall be disbursed in the event of such a dispute, pending the mediator's ruling. Disbursement shall thereafter be made pursuant to the Court's order.

3. RELEASES AND COVENANT NOT TO SUE.

3.1. *Released Claims.* Released Claims shall mean, under State and Federal law, any and all claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses and costs arising out of the allegations of the Complaint by any member of the Settlement Class, except that Released Claims are not intended to include the release of any of the following:

    3.1.1. Any rights or duties arising out of the Settlement Agreement, including the express warranties and covenants in the Settlement Agreement;

    3.1.2. Individual claims for benefits brought under state law pursuant to the Plan's documents that do not arise out of the allegations of the Complaint, provided that in such an individual claim for benefits no Settlement Class Member shall challenge the Plan's status as a Church Plan exempt from ERISA;

    3.1.3. Claims related to any other plan that is merged, adopted or consolidated into the Plan after the Effective Date of Settlement;

    3.1.4. Any claim arising under ERISA with respect to any event occurring after:

        3.1.4.1. The Internal Revenue Service issues a written ruling that the Plan does not qualify as a Church Plan;

        3.1.4.2. The Plan sponsor elects to be governed by ERISA;

        3.1.4.3. A court of law issues a definitive and final ruling that the Plan is not a Church Plan;

        3.1.4.4. The Roman Catholic Church disassociates itself from the Plan's Sponsor; or

        3.1.4.5. An amendment to ERISA is enacted and becomes effective as a law of the United States eliminating the Church Plan exemption.

3.2. *Release by Named Plaintiffs and Settlement Class.* Subject to § 9 below, upon the Effective Date of Settlement, Named Plaintiffs on behalf of themselves and on behalf of the Settlement Class absolutely and unconditionally release and forever discharge the Releasees

*Holcomb v. Hospital Sisters Health System*
**Settlement Agreement**
**May 31, 2018**

---

from any and all Released Claims that Plaintiffs or the Settlement Class have. The Settlement Class covenants and agrees: (i) not to file against any of the Releasees any claim based on, related to, or arising from any Released Claim; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such claim against any Releasee.

3.3.   *Waiver of California Civil Code § 1542.* Plaintiffs, on behalf of themselves and on behalf of the Settlement Class, hereby expressly waive and relinquish, to the fullest extent permitted by law and equity, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

3.4.   *Defendants' Releases of Named Plaintiffs, the Settlement Class, and Class Counsel.* Subject to § 9 below, upon the Effective Date of Settlement, Defendants absolutely and unconditionally release and forever discharge the Named Plaintiffs, the Settlement Class and Class Counsel from any and all claims relating to the institution or prosecution of the Action.

4.   COVENANTS.

Named Plaintiffs, on behalf of themselves and on behalf of the members of the Settlement Class, and Defendants, hereby covenant as follows:

4.1.   *Non-Disparagement.* The Parties, their counsel, and their agents shall refrain from making derogatory or disparaging comments as to the Settlement Agreement, Plaintiffs, Plaintiffs' Counsel, any Releasee, Defendants, the Plan, and/or Defendants' Counsel.

      4.1.1.   Defendants reserve the right to make informational statements to the employee-Settlement Class about the litigation, the settlement process, and other miscellaneous benefits issues related to the litigation and settlement; provided that such statements, if any, shall be non-disparaging and/or non-derogatory.

4.2.   *Press Release.* Plaintiffs shall not cause, discuss, cooperate, or otherwise aid in the preparation of any press release or statement to the press concerning the Defendants, the subject matter of the Action, or the terms of this Settlement Agreement unless such press release or statement to the press is approved by the Defendants in advance.

4.3.   *Plan Status.* Nothing herein shall be construed as an agreement that the Plan has not been, is not, and will not be, properly treated as a Church Plan or that the Plan was or is subject to ERISA. Similarly, nothing herein shall be construed as an agreement that the Plan is properly treated as a Church Plan or that the Plan is not subject to ERISA.

5.   REPRESENTATIONS AND WARRANTIES.

5.1.   *Parties' Representations and Warranties.*

7

      5.1.1. Named Plaintiffs represent and warrant, on behalf of themselves and the Settlement Class, that they shall have no surviving claim or cause of action against any of the Releasees for the Released Claims against them.

      5.1.2. The Parties, and each of them, represent and warrant that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel and in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently-selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof; and each Party assumes the risk of and unconditionally waives any and all claims or defenses arising out of any alleged mistake as to facts or law.

      5.1.3. The Parties, and each of them, represent and warrant that they have carefully read the contents of this Settlement Agreement; they have made such investigation of the facts and law pertaining to this Settlement Agreement and all of the matters pertaining thereto as they deem necessary; and this Settlement Agreement is executed freely by each Person executing it on behalf of each of the Parties.

5.2. *Signatories' Representations and Warranties.* Each individual executing this Settlement Agreement on behalf of any other Person hereby personally represents and warrants to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal that such individual represents or purports to represent.

6.     NO ADMISSION OF LIABILITY.

    Defendants and all Releasees deny any and all allegations of wrongdoing made in the Complaint. Defendants aver that the Plan has been and continues to be properly administered as a Church Plan, as defined in Internal Revenue Code Section 414(e) and ERISA Section 3(33). The Parties understand and agree that this Settlement Agreement embodies a compromise and settlement of disputed claims, and that nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement Agreement, shall be deemed to constitute any admission or finding that ERISA governs the Plan and/or of any wrongdoing by any of the Releasees. This Settlement Agreement and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal, equitable, or factual.

7.     SETTLEMENT PAYMENTS.

7.1.   *The Class Settlement Amount.*

      7.1.1. For four (4) fiscal years, Fiscal Years 2019 through 2022, HSHS will make annual cash contributions to the Plan of a minimum of $15.625 million per year (the "Annual Payment"), for a total of $62.5 million and during these four (4) fiscal years, at its sole discretion, after April 4, 2018, any of the Released Parties may fund any part

of the $62.5 million cash contribution at any time. HSHS may make the Annual Payment in a lump sum at any point during the Fiscal Year or may split the Annual Payment into a number of payments throughout the year, at its discretion. For Fiscal Year 2019 and any subsequent Fiscal Year, any amount paid in excess of the Annual Payment, including any contributions already made in Fiscal Year 2018, on or after April 4, 2018, may be used to reduce subsequent contributions. The Annual Payment and any other cash contributions to the Plan will be inclusive of, and not in addition to, any contributions made under the Plan's funding policy.

7.1.2. *Payment to Plaintiffs' Counsel.* Defendants will not oppose Plaintiffs' application to the Court for an award of reasonable attorney fees, out of pocket expenses, and Incentive Awards for Plaintiffs (together, the "Fee Award"). The Fee Award shall not exceed Eight Hundred Fifty Thousand Dollars ($850,000) (the "Maximum Total Fee"). Defendants will cause the Fee Award to be paid in addition to any other monetary terms set forth in this Settlement Agreement. The Fee Award will be subject to the discretion and approval of the Court, which may award an amount less than Eight Hundred Fifty Thousand Dollars ($850,000).

7.1.3. Defendants will pay Class Counsel the Maximum Total Fee or any lesser amount as ordered by the Court in its discretion, two weeks after the Court's entry of the Order and Final Judgment, notwithstanding the existence of any timely-filed objections thereto, potential for appeal therefrom, or any collateral attack on the Settlement or any part thereof, subject to the obligation of Class Counsel to make appropriate refunds or repayments to HSHS plus accrued interest (based on the one year Treasury constant maturity rate) within ten (10) calendar days, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or expense award is reduced or reversed.

7.1.4. *Application for Fees, Expenses, and Incentive Awards for Plaintiffs.* Class Counsel shall petition the Court for the Fee Award on the date set by the Court in its Preliminary Approval Order. Defendants and the Releasees expressly agree not to contest or take any position with respect to any application for the Fee Award that does not exceed the Maximum Total Fee, and acknowledge that these matters are left to the sound discretion of the Court. The procedure for and the allowance or disallowance of any application for the Fee Award that does not exceed the Maximum Total Fee are matters separate and apart from the Settlement and shall be requested to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating solely to a Fee Award that does not exceed the Maximum Total Fee, or any appeal from any order relating thereto, or any reversal or modification thereof, shall have no effect on the Settlement and shall not operate to, or be grounds to, terminate or cancel the Settlement Agreement or to affect or delay the finality of the Final Approval Order or Judgment.

7.2.  *Cost of Notice.* HSHS shall pay the cost for Class Notice in addition to the amounts specified above.

8. AGREED UPON PLAN PROVISIONS.

8.1. *Benefits Commitment.* Through Fiscal Year 2022 or until such time as the $62.5 million is contributed to the Plan as provided in § 7.1.1, if the Plan's Master Trust becomes insufficient to pay benefits as they are due and HSHS still sponsors the Plan, HSHS will contribute sufficient funds to pay the accrued benefits payable to Participants under the terms of the Plan as they are due.

8.2. *Plan Mergers.* Through Fiscal Year 2022 or until such time as $62.5 million is contributed to the Plan as provided in § 7.1.1, if the Plan is merged with or into another plan, adopted by additional employers, or consolidated with another plan, participants and beneficiaries in the Plan will be entitled to an accrued benefit post-merger, adoption, or consolidation event that is no less than they enjoyed before that event.

8.3. *Plan Amendment and Termination.* Notwithstanding any other provision of this agreement, including the cash contribution requirements of § 7.1.1, HSHS retains the right to amend or terminate the Plan at any time. If HSHS amends or terminates the Plan through Fiscal Year 2022 or before such time as $62.5 million is contributed to the Plan under § 7.1.1, such amendment or termination shall not result in a reduction of the benefit to any participant or beneficiary has accrued under the terms of the relevant Plan at the time of the amendment or termination. In the event the Plan is terminated, the cash contributions required by § 7.1.1 shall cease.

8.4. *Early Cash Contribution.* At their sole discretion after April 4, 2018, any of the Released Parties may fund the $62.5 million cash contribution stated in § 7.1.1, at any time, and the obligations of HSHS under §§ 8.1, 8.2, and 8.3 will end.

8.5. *Plan Administrative Arrangements.* Commencing one hundred and eighty (180) days after the Effective Date, the Plan Administrator will put in place certain arrangements concerning Plan administration, notices, and procedures as set forth in detail below. The requirements of this paragraph shall remain in effect through Fiscal Year 2022 or until such time as $62.5 million is contributed to the Plan under § 7.1.1.

> 8.5.1. *Summary Plan Descriptions (SPDs).* The Plan Administrator's designee shall prepare documents (referred to herein as "SPDs") written in a manner calculated to be understood by the average participant that contain the following information: The name and address of the Plan Sponsor, the name and address of the Plan Administrator, the name and address of the participating employers, a description of how benefits are paid, the pension formula, the vesting requirements, the requirements for participation in the Plan, and the claims and review procedures. The SPDs shall be available on HSHS's existing intranet system. Current participants and beneficiaries may send a written request for a written SPD, and HSHS shall provide a copy of such SPD via email or hard copy within thirty (30) days of receiving the participant or beneficiary's request.

8.5.2. *Pension Benefit Statements.* The Plan Administrator shall prepare pension benefit statements. The pension benefits statements shall be distributed via electronic delivery to actively employed participants once every three (3) years. The Plan Administrator will also respond to any request for pension benefit statements within thirty (30) days.

8.5.3. *Annual Report.* HSHS shall make a summary annual report available electronically by October 1st each year. It will contain the Plan Name and EIN, Plan year dates, funding arrangement, number of participants, and value of net assets at the beginning and end of each Plan year.

8.5.4. *Plan's Claim Review Procedure.* The Plan's claim review procedures, which shall be included as a part of the SPD, shall identify the applicable Committee that will make all initial determinations as to the right of any person to a benefit. Any denial by the applicable Committee of the claim for benefits under the Plan by a Participant or Beneficiary shall be stated in writing by the applicable Committee and delivered or mailed to the Participant or Beneficiary; and such notice shall set forth the specific reasons for the denial, written to the best of the Committee's ability in a manner calculated to be understood by the average Participant. In addition, the Committee shall afford a reasonable opportunity to any Participant or Beneficiary whose claim for benefits has been denied for a review of the decision denying the claim.

8.6. *Continuing Obligations.* All continuing obligations of the Defendants under this Settlement Agreement or the Term Sheet shall cease if, prior to the expiration of the period of time such obligations are in effect, the Plan becomes subject to ERISA.

9. TERMINATION OF THE SETTLEMENT AGREEMENT.

9.1. *Automatic Termination.* This Settlement Agreement shall automatically terminate, and thereupon become null and void, in the following circumstances:

9.1.1. If the Court declines to approve the Settlement, and if such order declining approval has become Final, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the date that any such order becomes Final, provided, however, that if the Court declines to approve the Settlement for any reason, the Parties shall negotiate in good faith to cure any deficiency identified by the Court, and further provided that, if necessary to cure any such deficiency, Class Counsel shall re-submit within a reasonable time the Preliminary or Final Approval Motion with an additional or substitute member of the Settlement Class as a named Class Representative.

9.1.2. If the Court issues an order in the Action modifying the Settlement Agreement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Court or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon

become null and void, on the thirty-first (31st) day after issuance of the order referenced in this § 9.1.2.

9.1.3. If the Seventh Circuit reverses the District Court's order approving the Settlement, and if within ninety-one (91) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Seventh Circuit or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the ninety-first (91st) day after issuance of the Seventh Circuit order referenced in this § 9.1.3.

9.1.4. If the Supreme Court of the United States reverses or remands a Seventh Circuit order approving the Settlement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Supreme Court or by the Parties, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first (31st) day after issuance of the Supreme Court order referenced in this § 9.1.4.

9.1.5. If a Review Proceeding is pending of an order declining to approve the Settlement Agreement or modifying this Settlement Agreement, this Settlement Agreement shall not be terminated until Final resolution or dismissal of any such Review Proceeding, except by written agreement of the Parties.

9.2. *Consequences of Termination of the Settlement Agreement.* If the Settlement Agreement is terminated and rendered null and void for any reason, the following shall occur:

9.2.1. The Consolidated Action shall for all purposes with respect to the Parties revert to its status as of April 3, 2018.

9.2.2. All Releases given or executed pursuant to the Settlement Agreement shall be null and void; none of the terms of the Settlement Agreement shall be effective or enforceable; neither the fact nor the terms of the Settlement Agreement shall be offered or received in evidence in the Actions or in any other action or proceeding for any purpose, except in an action or proceeding arising under this Settlement Agreement.

10. MISCELLANEOUS PROVISIONS.

10.1. *Jurisdiction.* The Court shall retain jurisdiction over all Parties, the Settlement Class, the Action, and this Settlement Agreement to resolve any dispute that may arise regarding this Settlement Agreement or the orders and notice referenced in § 2 above, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement, and no Party shall oppose the reopening and reinstatement of the Consolidated Action on the Court's active docket for the purposes of effecting this § 10.1.

*Holcomb v. Hospital Sisters Health System*
**Settlement Agreement**
**May 31, 2018**

---

10.2.   *No Limitation of Remedies.* In the event that the Defendants breach this Settlement Agreement, Plaintiffs will continue to have any and all remedies for such breach. In the event that Plaintiffs or the Settlement Class breaches this Settlement Agreement, Defendants will continue to have any and all remedies for such breach.

10.3.   *Governing Law.* This Settlement Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case Illinois law will apply without regard to conflict of law principles.

10.4.   *Severability.* The provisions of this Settlement Agreement are not severable.

10.5.   *Amendment.* Before entry of a Final Approval Order, any common law to the contrary notwithstanding, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of a Final Approval Order, any common law to the contrary notwithstanding, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties, and approved by the Court.

10.6.   *Waiver.* The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving Party. The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach of this Settlement Agreement, whether prior, subsequent, or contemporaneous with this Settlement Agreement.

10.7.   *Construction.* None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against a drafter.

10.8.   *Principles of Interpretation.* The following principles of interpretation apply to this Settlement Agreement:

> 10.8.1. *Headings.* The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.
>
> 10.8.2. *Singular and Plural.* Definitions apply to the singular and plural forms of each term defined.
>
> 10.8.3. *Gender.* Definitions apply to the masculine, feminine, and neuter genders of each term defined.
>
> 10.8.4. *References to a Person.* References to a Person are also to the Person's permitted successors and assigns.
>
> 10.8.5. *Terms of Inclusion.* Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

10.9.   *Further Assurances.* Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

10.10.  *Survival.* All representations, warranties and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

10.11.  *Notices.* Any notice, demand, or other communication under this Settlement Agreement (other than notices to members of the Settlement Class) shall be in writing and shall be deemed duly given if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier:

A.   IF TO NAMED PLAINTIFFS:

Lynn Lincoln Sarko
Laura R. Gerber
Alison S. Gaffney
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Fax: (206) 623-3384

Ron Kilgard
KELLER ROHRBACK L.L.P.
3101 North Central Ave., Suite 1400
Phoenix, AZ  85012
Fax: (602)248-2822

Karen L. Handorf
Michelle C. Yau
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC  20005
Fax: (202) 408-4699

B.   IF TO DEFENDANTS:

Howard Shapiro
Stacey C.S. Cerrone
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA  70130
Fax: (504) 310-2022

14

*Holcomb v. Hospital Sisters Health System*
**Settlement Agreement**
**May 31, 2018**

---

Amy K. Bulpitt
Vice President and General Counsel
Hospital Sisters Health System
4936 LaVerna Road
Springfield, IL 62707
Fax: (217) 523-0542

Any Party may change the address at which it is to receive notice by written notice delivered to the other Parties in the manner described above.

10.12. *Entire Agreement.* This Settlement Agreement contains the entire agreement among the Parties relating to the settlement of the Action. It specifically supersedes any settlement terms or settlement agreements relating to Defendants that were previously agreed upon orally or in writing by any of the Parties, including the terms of the Term Sheet and any and all discussions, representations, warranties, or the like prior to the Effective Date of Settlement.

10.13. *Counterparts.* This Settlement Agreement may be executed by exchange of faxed or emailed executed signature pages, and any signature transmitted by facsimile for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

*Holcomb v. Hospital Sisters Health System*
**Settlement Agreement**
**May 31, 2018**

---

*FOR NAMED PLAINTIFFS AND THE SETTLEMENT CLASS*

Dated this the 31st day of May, 2018.

By: */s/ Laura R. Gerber*
Lynn Lincoln Sarko
Laura R. Gerber
Alison S. Gaffney
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Fax: (206) 623-3384

Ron Kilgard
KELLER ROHRBACK L.L.P.
3101 North Central Ave., Suite 1400
Phoenix, AZ 85012
Fax: (602) 248-2822

By: */s/ Karen L. Handorf*

Karen L. Handorf
Michelle C. Yau
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005

*Class Counsel*

*Holcomb v. Hospital Sisters Health System*
**Settlement Agreement**
May 31, 2018

**FOR ALL DEFENDANTS**

Dated this the 31st day of May, 2018.

By: _____
Howard Shapiro
Stacey C.S. Cerrone
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130
Fax: (504) 310-2022

*Attorneys for Defendants*

98797663v1